## WILSON v. BROWN.

(Court of Civil Appeals of Texas. Austin. Dec. 18, 1912. Rehearing Denied Feb. 26, 1913.)

1. DEATH (§ 11*)—RIGHT OF ACTION—COMMON LAW.

At common law one cannot maintain an action for damages for wrongfully causing the death of a third person, though murder was committed in causing the death so as to subject defendant to a prosecution.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 10, 15; Dec. Dig. § 11.*]

2. HUSBAND AND WIFE (§ 205*)—ACTION BETWEEN—TORT ACTIONS.

Neither spouse can maintain an action against the other for damages founded upon a tort.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 744, 748–755; Dec. Dig. § 205.*]

3. DEATH (§ 93*) — EXEMPLARY DAMAGES — CONSTITUTIONAL PROVISION.

Const. art. 16, § 26 (Rev. Civ. St. 1911, art. 4696), providing that, when death is caused by defendant's willful act or omission, exemplary as well as actual damages may be recovered, did not change the common-law rule that exemplary damages cannot be recovered if actual damages were not recovered.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 98; Dec. Dig. § 93.*]

4. DEATH (§ 31*)—RIGHT OF ACTION—ACTION BY WIFE.

Under Rev. Civ. St. 1911, art. 4695, providing that the wrongful act mentioned in section 4694, giving a right of action for damages for death caused by another's wrongful act, must be "of such a character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury," an action cannot be maintained, unless decedent could have maintained an action for damages for his injury, had he not died therefrom, so that a guardian of infants could not maintain an action for damages to the infants for the wrongful murder of their mother by her husband, since the mother could not have maintained an action against defendant, her husband, had she survived.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 35–46, 48; Dec. Dig. § 31.*]

5. CONSTITUTIONAL LAW (§ 70*) — JUDICIAL POWERS—ENCROACHMENT ON LEGISLATURE.

It is the court's duty to administer the law as written by the Legislature, and not to make the law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 129–132, 137; Dec. Dig. § 70.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Appeal from District Court, Brown County; John W. Goodwin, Judge.

Action by J. L. Wilson, guardian, against G. H. Brown. From a judgment for defendant, plaintiff appeals. Affirmed.

The following statement of the nature and result of this suit is copied from appellant's brief: "This suit was brought in the district court of Brown county, Tex., by J. L. Wilson, as guardian of the person and estate of Viola Wilson, Ava Wilson, Lum Wilson, and Lloyd Brown; and the substance of plaintiff's first amended original petition, upon which the proceedings were had, was as follows, to wit: That plaintiff had theretofore been appointed such guardian by the county court of Comanche county, Tex., and had duly qualified; that Viola Wilson, Ava Wilson, Lum Wilson, and Lloyd Brown were each the children of Sallie Brown, and that the father of the three first-named children was dead, and that after his death the said Sallie Brown (then Mrs. Sallie Wilson) married L. H. Brown, and by that union the ward Lloyd Brown was born; that she was thereafter divorced from L. H. Brown, and by such decree of divorcement she was given the care, custody, and education of Lloyd Brown; that she was then married to G. H. Brown, the defendant, with whom she lived, and was his wife at the time of her death; that, at the time of the death of their mother, these children were the following ages, to wit, Viola Wilson, 16 years, Ava Wilson, 14 years, Lum Wilson, 10 years, and Lloyd Brown, 8 years; that the mother of said children, Sallie Brown, was a person of good health and energetic disposition, and that she was of bright mind and good intelligence; that she was very much attached to her children, and that she had always looked after the mental, moral, and educational development of her children, and had educated, supported, and clothed them, and that no other person had contributed to their assistance in the manner, and that she would have continued to perform this service for them during their minority; that she left them no property at her death, and there was no one left to render them, during their minority, the assistance that their mother had given them and would have continued to bestow on them. It was further alleged that on the night of the 9th of September, 1911, the defendant, G. H. Brown, brutally murdered his wife, Sallie Brown, the mother of plaintiff's wards; and, by such act deliberately and willfully done, he deprived those children of all the advantages they would have received from their mother. All these matters were set out in the first count of the petition, and which concludes with the prayer that plaintiff recover for the use and benefit of each of his wards the sum of $2,500 as actual damages, and $10,000 for each of them as exemplary damages. In a second count of said petition the plaintiff adopted all the allegations contained in the first count, and further alleged that, by the murder of their mother, the defendant had deprived them of all the advantages that would have come to them by reason of the companionship, maternal influence and association, the nurture, love, tenderness, solicitude, and affection with which their mother would have watched over their future moral, mental, educational, and spiritual development, and that there had been inflicted on them great sorrow and mental anguish on account of the death of their mother; and, on account of the things stated above, the defendant had inflicted actual damages on each of them in the sum of $2,500, for which they prayed judgment. And plaintiff in said count further alleged that by section No. 26, art. No. 16, of the Constitution of the state of Texas, and by reason of the fact that the assault made upon the said Sallie Brown by the defendant was by him willfully made with the specific intent to then and there end her life, and which assault in effect accomplished that purpose, the plaintiff is entitled to recover of the defendant, for each of his wards, the sum of $10,000 exemplary damages, and this whether plaintiff was entitled to recover actual damages under the first count of his petition, or under the second count of the petition, or whether it should be held that no actual damages were recoverable under either count. Plaintiff prayed for damages set out in the first count of the petition, and in the alternative for the damages claimed by the second count. The court sustained the general demurrer of the defendant; and, the plaintiff declining to amend, the cause was ordered dismissed, with judgment against the plaintiff for all costs, to which ruling the plaintiff excepted and gave notice of appeal."

L. V. Reid, of Comanche, for appellant. T. C. Wilkinson, of Brownwood, for appellee.

KEY, C. J. (after stating the facts as above). The only question presented for decision is the action of the trial court in sustaining the general demurrer to the plaintiff's petition. It is stated in appellant's brief that the ruling referred to was based upon the proposition that, as a married woman cannot maintain a suit against her husband for damages based upon a tort committed against her by her husband, therefore the plaintiff in this case has no right of action against the defendant; and, if that view of the case is correct, the judgment must be affirmed.

In 1840 the Congress of the republic of Texas adopted the common law as the rule of decision, except when inconsistent with constitutional or statutory enactment, and that legislative adoption is still in force in this state.

[1] At the time of the adoption of the common law, and ever since that time, it has

been a well-settled rule of that system of law that no person can maintain an action against another person for wrongfully causing the death of a third person, even though the wrongdoer be guilty of murder and subject to a criminal prosecution therefor.

[2] At the time referred to, and ever since then, it was and has been a rule of the common law that neither spouse could maintain an action against the other to recover damages founded solely upon a tort. Nickerson & Matson v. Nickerson, 65 Tex. 281. In the case cited Nickerson and his codefendant had unlawfully caused Nickerson's wife to be arrested and put in prison; and, after obtaining a divorce from her husband, she prosecuted a suit against him and his codefendant for damages, and recovered a judgment against them for $200. The case was appealed, and, as to the controversy between Nickerson and his wife, the Supreme Court held that it was not a question of parties, but that, on account of the marital relation, no cause of action ever existed in favor of Mrs. Nickerson as against her husband, and therefore she could not maintain the suit against him, although they were not husband and wife at the time the case was tried. Judge Speer, in his excellent work on the Rights of Married Women, has compared the Nickerson Case with other decisions rendered by the same court and holding that a married woman can maintain a suit against her husband for the purpose of protecting her property rights; and inferentially the Nickerson Case is criticised by Judge Speer as being unsound in principle. That case seems to be supported by the weight of authority; and, whatever may be our views we do not feel justified in declining to accept it as the established law of this state. Its pertinency will appear later on in this opinion.

Having no such right at the common law, if the plaintiff can maintain this action, the right to do so must be found in the legislation of this state relating to the subject of injuries resulting in death, or in some provision of the Constitution concerning that subject; and the statutory provisions relied on by appellant and incorporated in the Revised Civil Statutes of 1911 are as follows:

"Art. 4694. Actions for Injuries Resulting in Death, Brought When.—An action for actual damages on account of injuries causing the death of any person may be brought in the following cases: (1) When the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer, hirer of any railroad, steamboat, stage coach or other vehicle for the conveyance of goods or passengers, or by the unfitnes, negligence or carelessness of their servants or agents; when the death of any person is caused by the negligence or carelessness of the receiver or receivers or other person or persons in charge or control of any railroad, their servants or agents; and the liability of receivers shall extend

to cases in which the death may be caused by reason of the bad or unsafe condition of the railroad or machinery or other reason or cause by which an action may be brought for damages on account of injuries, the same as if said railroad were being operated by the railroad company. (2) When the death of any person is caused by the wrongful act, negligence, unskilfulness or default of another.

"Art. 4695. Character of Wrongful Act.— The wrongful act, negligence, carelessness, unskillfulness or default mentioned in the preceding article, must be of such a character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury.

"Art. 4696. Exemplary Damages.—When the death is caused by the willful act or omission, or gross negligence of the defendant, exemplary as well as actual damages may be reccovered. Const. art. 16, § 26."

Subsequent articles designate the surviving husband, wife, children, and parents as the beneficiaries of the statute, and prescribe who may bring the suit and authorize a guardian to sue in behalf of his wards. The last article quoted, relating to exemplary damages, is embodied in the present Constitution of this state; and it is contended on behalf of appellant that, whatever may be decided as to the right to recover actual damages, the right to recover exemplary damages, under the constitutional provision referred to, is not subject to nor controlled by article 4695, which places a limitation upon the right to recover actual damages. That question will be disposed of before entering upon a discussion of the main question in the case. The substance of article 4694, creating a cause of action for injuries resulting in death, was first enacted in 1860; and, as it was limited to actual, and therefore did not confer the right to recover exemplary, damages, the purpose of the constitutional provision referred to, which became operative in 1876, was, doubtless, to supply that omission and to permit, not only the recovery of actual damages, but, in addition thereto, exemplary damages, when the death was caused by the willful act or omission or gross negligence of the defendant.

[3] It has always been the rule of the common law that there could be no recovery of exemplary damages where there was no recovery of actual damages; and it is not believed that the constitutional provision under consideration was intended to reverse that rule. Such was the ruling of this court in the case of Ritz v. City of Austin, 1 Tex. Civ. App. 455, 20 S. W. 1029, in which the same point now under consideration was presented and decided against the contention urged by appellant in this case; and we see no reason to depart from the ruling there made.

[4] This brings us to the main point in this case, and that involves a construction

of article 4695, which, in effect, declares that, in a suit of this kind, no recovery can be had unless the wrongful act, negligence, carelessness, unskillfulness, or default of the defendant is of such character that the deceased, if death had not ensued, could have recovered damages for the injury inflicted. And here is where the pertinency of the Nickerson Case becomes apparent. As a result of the decision made by our Supreme Court in that case, it is quite clear that if Mrs. Brown, the deceased in this case, had survived the murderous assault which her husband made upon her, although, by reason of that assault, she might have obtained a divorce, she could not have maintained an action for damages against her husband, the defendant in this case. Like most of the statutes in other states, our statute, creating a cause of action for injuries resulting in death, is a substantial copy of Lord Campbell's Act, which was adopted by the English Parliament. The statutes referred to are digested, and many of the decisions construing them annotated in 13 Cyc., under the title "Death," and we quote from page 313 the following: "Under Lord Campbell's Act, and statutes framed thereon, the personal representative of the deceased can only maintain an action where, had the deceased survived, he himself at common law could have maintained such action."

Judge Street, in section 82 of his valuable treatise on Personal Injuries in Texas, in dealing with the same subject, says: "As liability exists under the statute when, and when only, it would have existed had the injured party survived, separate treatment of substantive law is not required in this connection, as it will be found elsewhere." Another text-writer deals with the subject in the following language: "An essential limitation upon the words 'wrongful act, neglect, or default' is created by the provision that they must be such as would have entitled the party injured to maintain an action therefor. This provision makes it a condition to the maintenance of the statutory action that an action might have been maintained by the party injured for the bodily injury. The condition has reference, of course, not to the loss or injury sustained by him, but to the circumstances under which the bodily injury arose, and to the nature of the wrongful act, neglect, or default; and, although this condition has not been expressed in California, Idaho, Kentucky, North Dakota, South Dakota, and Utah, no case has been found in which it has not been implied. A preliminary question arises, therefore, in every action for death, namely, was the act, neglect, or default complained of such that if it had simply caused bodily injury, without causing death, the party injured might have maintained an action." Tiffany, Death by Wrongful Act, § 63. These texts are well supported by the weight of judicial decisions. Thompson v. Railway Co., 97 Tex. 590, 80 S. W. 990,

1 Ann. Cas. 231; Southern Bell Telephone & Telegraph Co. v. Cassin, 111 Ga. 575, 36 S. E. 881, 50 L. R. A. 694; Price v. Railroad Co., 33 S. C. 556, 12 S. E. 413, 26 Am. St. Rep. 700; Hill v. Pennsylvania Ry. Co., 178 Pa. 223, 35 Atl. 997, 35 L. R. A. 196, 56 Am. St. Rep. 754; Legg v. Britton, 64 Vt. 652, 24 Atl. 1016; Hecht v. O. & M. Ry. Co., 132 Ind. 507, 32 N. E. 302; Littlewood v. Mayor, 89 N. Y. 24, 42 Am. Rep. 271.

In the Hecht Case, supra, the Supreme Court of Indiana said: "The wording of Lord Campbell's Act and the statute of this state differ somewhat, but are in effect the same. The purpose of each was to give to the personal representative of the deceased a right of action if the deceased, at the instant of his death, would have had a right of action for the same act or omission. Each act gives a right of action to the personal representatives of the deceased for the wrongful act only in cases where the injured party had a right of action at the instant of his death, which he might have maintained if he had survived." In that case the injured party had recovered and collected a judgment for the injuries which subsequently resulted in his death, and that fact was held to bar the right of the beneficiaries under the statute to maintain an action.

In the Legg Case, supra, it appears that the Legislature of Vermont had enacted a statute by which a suit brought for personal injuries should survive the death of the injured party, and had also enacted the substance of Lord Campbell's Act; and it was there held that, as the injured party brought suit, which was prosecuted to judgment after his death, such judgment would bar the right of the next of kin to maintain an action for damages.

In the Pennsylvania and Georgia cases cited above, and in the Thompson Case in 97 Tex., it was held that, where the deceased made a settlement and released the defendant, that fact would bar the right of the beneficiaries named in the statute to maintain an action.

In the Hill Case, supra, the Supreme Court of Pennsylvania quotes from Judge Blackburn's opinion in Reed v. Great Eastern Ry. Co., L. R. 3 Q. B. 555, where Lord Campbell's Act was construed; and it was held that, if the deceased had released the defendant, the next of kin could not maintain an action.

In reaching the same conclusion as to the effect of the settlement made with, and a release executed by, the deceased, our own Supreme Court in the Thompson Case, after copying our statute and stating that it embodied the substance of Lord Campbell's Act, and citing the decisions above referred to, used this language: "The decisions rest upon (1) the manifest intention of the Legislature to provide a remedy where, by common law, none existed, and not to make the wrongdoer pay twice for one wrong; (2) upon the pro-

vision of the statute that the right of action exists only in cases wherein the injured party could himself maintain the action if he were living. Of this last ground the New York Court of Appeals in Littlewood v. Mayor, above cited, says: 'It is argued, and adjudications sustain the argument, that the condition that the wrongful act, etc., must be such as would have entitled the party injured to maintain an action has reference to the circumstances of the injury and the character of the act, including the question of contributory negligence, etc. This is undoubtedly true, and such is the purport of the language. But it does not follow that it can have no further effect, and that it cannot be considered for the purpose of determining whether the right of action created by the statute was intended to be given in cases where the deceased had in his lifetime actually recovered damages for the injury, or only in cases where he could have recovered them had he lived, but had not done so.' The argument is sound, and the conclusion is supported· by the following portion of Lord Campbell's Act: 'Whereas no action at law is now maintainable against the person who, by his wrongful act, negligence, or default may have caused the death of another person, and it oftentimes is right and expedient that the wrongdoer in such cases should be answerable in damages for the injury so caused by him,' etc. From this language it appears that the purpose of the original act was to give to the persons named compensation for the death to remedy the wrong suffered by the defect of the common law. The language, 'and the act, negligence, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action for such injury,' found in our first act, renders it practically certain that the purpose of the Legislature was to furnish a remedy for the injury caused by the death to those dependent upon the deceased by giving to them an action in lieu of that which he might have maintained, but did not assert, but not to provide double compensation for one wrong. This action depends upon the same facts (with the additional fact of death) as did the action of the injured party, and was 'subject to the same defenses of contributory negligence, assumed risk, or that the injury resulted from the negligence of a fellow servant, etc.; the principal difference between the two actions being in the measure of recovery. The right of action given to the injured person does not, in the event of his death, survive under our statutes; but an action by the dependent relatives named is substituted for that which was lost by the death." It will. be observed that the court there states that the decisions therein cited rest, in part, "upon the provision of the statute that the right of action exists only in cases wherein the injured party could him-self maintain the action if he were living." It is also, in effect, there stated that any defense that would be available as against the deceased would defeat a suit brought by the beneficiaries mentioned in the statute, and the defenses of contributory negligence, assumed risk, and fellow servant are specifically designated.

Counsel for appellant concedes in his brief that contributory negligence and assumed risk are available as a defense, because he says that these are to be imputed by relation to the beneficiaries designated in the statute, and are materially different from the mere fact that the deceased was the wife of the defendant, which was merely a status. But what about the defense of fellow servant? A brakeman on the rear end of a long train, and the engineer in control of the engine in front, are fellow servants, and that relation constitutes a status; and yet in Railway Co. v. Berry, 67 Tex. 238, 5 S. W. 817, it was decided by our Supreme Court that, on account of such relationship, the surviving wife and children could not maintain an action against the railroad company for injuries which resulted in the death of Berry, the brakeman, that were caused by the negligence of the engineer, unless it was shown that the defendant failed to exercise proper care when it employed the engineer.

It seems to be contended in appellant's brief that the words, in article 4695, "of such a character" must be construed as descriptive of the act or acts of the defendant in and of themselves and separate and apart from the surrounding circumstances. The authorities, the context of the entire statute, and the admission in appellant's brief that contributory negligence and assumed risk are available as a defense show that such construction is not sound. The authorities show that the reasonable and sound construction to be placed upon that article is that it was the intention of the Legislature to declare that, unless the deceased could, at the time of his death, have maintained an action for the injury, such right of action should not exist in favor of the beneficiaries mentioned in the statute. It is fair to assume that, when this statute was enacted, the Legislature knew that there were different classes or kinds of wrongful acts, negligence, etc., and that the classifications depended, in part at least, upon surrounding circumstances, and also that in some classes the injured party could maintain an action, while in others he could not; and, no doubt, the words "of such a character" were used in that sense. Take, for instance, the defense of contributory negligence which, as a general rule, constituted an absolute defense at common law at the time this statute was enacted; but there was a class of cases sufficiently indicated by the words "discovered peril," in which contributory negligence was not a defense. Or take the case at bar, which

shows an assault by a man upon a woman. Ordinarily such wrongful conduct gives rise to a cause of action in favor of the woman. But there is a class of cases in which no such result follows, namely, when one spouse makes an assault upon the other; and, as this case belongs to that class, the assault is, in a legal sense, characterized by the fact that the woman upon whom it was made was the wife of the defendant who made it.

Recurring to the Thompson Case, it will be noted that the court states that it was the purpose of the statute to give to those dependent upon the deceased an action in lieu of that which he might have, but did not assert; and in another place it is stated that the right of action is given as a substitute for that which was lost by the death of the injured party. In the case at bar the deceased never had any cause of action, as is shown by the Nickerson Case, and therefore this case is not within the purview of the statute which creates the cause of action. Substitution necessarily implies the pre-existence of something for which the other thing is substituted. It is impossible to substitute something for nothing.

While the cases we have reviewed and the case in hand involve different facts in detail, they all involve a construction of the same statute; and if, as held in the cases referred to, it was the legislative intention that no cause of action should exist, if none existed in favor of the injured party at the time of his death, then this suit cannot be maintained, because Mrs. Brown, the injured party, had no cause of action at the time of her death, nor at any other time. Nor is it material that Mrs. Brown was free from fault. It is the fact that she had no cause of action, and not the reason or rule of law that establishes that fact, which defeats the right to maintain this suit. She was no less at fault than many employés who are injured by the negligence of a fellow servant. Then why should not the same rule apply to both classes of cases? It is no answer to say that the employé is not compelled to remain in the service, because, in some cases, he is obliged by contract to do so; and in no case is he in fault by doing so, if he had no reason to apprehend negligence on the part of his fellow servant. We can see no distinction in principle between the two classes of cases.

[5] If the facts stated in the plaintiff's petition are true, the affirmance of the judgment of the court below may result in great hardship to his wards; and if this court possessed the power to make law, and was not restrained by existing laws, it would not hesitate to do what it conceived to be proper to prevent such hardship; but as was said by Chief Justice Stayton in Turner v. Gross & Eddy, 83 Tex. 224, 18 S. W. 579, 15 L. R. A. 262: "It is the duty of a court to administer the law as it is written, and not to make the law; and however harsh a statute may seem to be, or whatever may seem to be its omissions, courts cannot on such considerations by construction restrain its operation or make it apply to cases to which it does not apply, without assuming functions that pertain solely to the legislative department of the government."

Our conclusion is that the trial court rendered the proper judgment, and therefore its judgment is affirmed.

Affirmed.