MAGNOLIA COCA COLA BOTTLING COMPANY V.
H. P. JORDAN ET AL.

No. 6258. Decided January 23, 1935.
(78 S. W., 2d Series, 944.)

348

*Brown & Brooke,* of El Paso, for plaintiffs in error.

There is no statutory authority under R. S., 1925, Article 4671, sec. 1, which affords a basis for damages for prenatal injuries in favor of either the child or its parents, and it was error for the Court of Civil Appeals to construe said statute by holding that the word "person" under this article and section was intended to include an unborn child. A prenatal injury

affords no basis for an action for damages in favor of either the child or its parents. Cited cases discussed in opinion.

It was error for the court to fail to define "unavoidable accident." Robertson & Mueller v. Holden, 1 S. W. (2d) 570 (Com. App.); East Texas Elec. Co. v. Rhymes, 1 S. W. (2d) 688; Lone Star Gas Co. v. Haire, 41 S. W. (2d) 424.

*Lea, McGrady & Edwards,* of El Paso, for defendants in error.

The neligent and violent injuries inflicted by defendant upon the person of Mrs. Jordan, who was at that time carrying an unborn child, eight months developed, and which died nineteen days after its premature birth as the result of such injuries, may be the basis of an action for damages, resulting in death, brought by the parents, and the court erred in its conclusion of law to the contrary. Cases cited on this proposition are discussed in the opinion.

The issue of unavoidable accident not being raised by the evidence of the case, the submission of the issue and the charge thereon was, for that reason, immaterial and did not harm the defendant. Boyles v. McClure, 243 S. W., 1080 (Com. App.); Eastern Texas Elec. Co. v. Hunsucker, 280 S. W., 887 (writ of error dismissed); Russell v. Bailey, 290 S. W., 1108 (writ of error dismissed); Dallas Ry. & Ter. Co. v. Darden, 38 S. W. (2d) 777 (Com. App.).

MR. JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

Defendants in error, Jordan and wife, sued plaintiff in error for damages resulting from negligence of an employee of plaintiff in error in the operation of its truck. They alleged that the truck struck the automobile driven by Mrs. Jordan and caused it to collide with another automobile parked at the curb; that Mrs. Jordan, who was then pregnant, was crushed against the steering wheel and other parts of the automobile and her abdomen and back badly bruised; and that she was caused thereby to give premature birth to twin babies, on of which was born bruised and, after living 19 days, died as a result of the injuries suffered by it from the negligence of the driver of the truck. Defendants in error sued for damages both for personal injuries suffered by Mrs. Jordan and for loss of the services of the child.

After trial and verdict, judgment was rendered in favor of defendants in error for $5,000 as compensation for the

personal injuries suffered by Mrs. Jordan. Although the jury found that the unborn child suffered physical injuries as a result of the collision, that it died as the proximate result of the injuries so received, and that defendants in error suffered pecuniary damages to the amount of $1,250 in the death of the child, the trial court refused to render judgment for such damages, on the ground, as stated in the judgment, that "the law gives to parents no cause of action for the loss of a child which dies as a proximate result of injuries while it is still quick in the womb of its mother, even though such injuries be inflicted by the negligence of the defendant."

The Court of Civil Appeals affirmed the judgment of the trial court for $5,000 on account of the personal injuries suffered by Mrs. Jordan, and also rendered judgment in favor of defendants in error for the additional sum of $1,250 with interest on account of the death of the child. 47 S. W. (2d) 901.

Plaintiff in error presents but four assignments of error. One of these complains of the action of the Court of Civil Appeals in rendering judgment for the additional sum as compensation for the death of the child, while the other three assignments question the correctness of the manner in which the trial court submitted to the jury the issue of unavoidable accident and defined, or failed to define, certain terms in connection with such issue.

■ The question whether damages may be recovered for the death of a child resulting from prenatal injuries has not heretofore been determined in this state. Since at common law there is no right to recover damages for death, "the right must be found in the statute itself fairly construed." Farmers' & Mechanics' National Bank v. Hanks, 104 Texas, 320, 325, 137 S. W., 1120. The Texas statute permitting actions to be brought for damages on account of injury causing death, and which has been in effect for many years, with amendment from time to time, is Title 77, Articles 4671-4678, Revised Civil Statutes of 1925. Article 4671 provides in substance that an action for actual damages on account of injury causing the death of any person may be brought when the injury is caused by the wrongful act, neglect or default of another person, corporation, etc. Article 4672 is as follows:

"The wrongful act, negligence, carelessness, unskilfulness or default mentioned in the preceding article must be of such character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury."

This article has not been construed literally as having reference only to the *character* of the wrongful or negligent act, but it has been construed and applied as meaning that the right of action given by the preceding article exists only in cases wherein the injured person could himself have maintained an action for damages had he lived.

In Wilson v. Brown, 154 S. W., 322 (application for writ of error refused) the contention was made that the words "of such character" used in the statute should be construed as descriptive of the act or acts of the defendant in and of themselves and separate and apart from the surrounding circumstances. The court, in holding that such construction was not sound, said:

"The authorities show that the reasonable and sound construction to be placed upon that article is that it was the intention of the legislature to declare that unless the deceased could at the time of his death have maintained an action for the injury, such right of action should not exist in favor of the beneficiaries mentioned in the statute." See also: Thompson v. Ft. Worth & R. G. Ry. Co., 97 Texas, 590, 80 S. W., 990; Sullivan-Sanford Lumber Co. v. Watson, 106 Texas, 4, 155 S. W., 179.

In this case, therefore, no action can be maintained by defendants in error for damages on account of the death of the child unless the child, had it lived, could have maintained an action against plaintiff in error for the injury inflicted upon it before its birth. The question whether such right of action exists must be determined either by the application of sound rules or principles of the common law, or from adjudicated cases illustrating such rules or principles. Without deciding the question, Judge Lamm, in Kirk v. Middlebrook, 201 Mo., 245, 285, 100 S. W., 450, speaks of its as "a most formidable, a most novel and anxious question."

We have found no decision (and the parties have cited none) by an appellate court of final jurisdiction holding that damages for prenatal injury may be recovered either by the injured child if it is born and lives or by the beneficiaries in the event of its death from such injury. "The cases are agreed that in the absence of statute a prenatal injury affords no basis for an action in damages, in favor either of the child or its personal representative." Note 20 A. L. R., pp. 1505 and following. See also 14 R. C. L., p. 218, Sec. 5.

Vigorous arguments in favor of the existence of such right of action are found in two dissenting opinions, in two opinions by the appellate division of the Supreme Court of New York,

and in several articles in law journals. See: dissenting opinion of Justice Boggs in Allaire v. St. Luke's Hospital, 184 Ill., 358, 56 N. E., 638, 48 L. R. A., 225; dissenting opinion of Justice Windes in Allaire v. St. Luke's Hospital, 76 Ill. Ap., 441; Drobner v. Peters (App. Div.), 186 N. Y. Supp., 278; Nugent v. Brooklyn Heights R. Co. (App. Div.), 139 N. Y. Supp., 367; 58 Central Law Journal, 143; 61 Central Law Journal, 364; 12 St. Louis Law Review, 85.

The Supreme Court of Massachusetts, in Dietrich v. Northampton, 138 Mass., 14, 52 Am. Rep., 242, held that a mother could not maintain an action for damages on account of the death of her prematurely born child. The mother, when she was between four and five months advanced in pernancy, slipped upon a defect in a highway of the defendant town. The fall caused a miscarriage and the child was too little advanced to survive its premature birth, although there was some evidence indicating that it lived ten or fifteen minutes. Justice Oliver Wendell Holmes, in writing the opinion, said: "No case as far as we know has ever decided that if the infant survived, it could maintain an action for injuries received by it while in its mother's womb." He expressed doubt "whether a man might owe a civil duty and incur a conditional prospective liability in tort to one not yet in being," and he found no useful analogy in Lord Coke's statement of a rule of the law in England "to the effect that if a woman is quick with child and takes a potion, or if a man beats her, and the child is born alive and dies of the potion or battery, this is murder." The decision is based primarily upon the conclusion that the unborn child was a part of the mother at the time of the injury.

In Walker v. Great Northern Ry. Co. of Ireland, 28 L. R. Ir., 69, the four justices who heard the case wrote elaborate opinions holding that demurrer should be sustained to the statement of plaintiff's claim. The case is thus tersely stated in one of the opinions: "A woman who is with child is in a railway accident, and the infant when born is found to be deformed. Can the infant maintain an action against the company for negligence?"

Two of the justices decided the case upon the single ground that the contract of the carrier was made with plaintiff's mother, with no averment that the defendant knew of the pregnancy of the mother, and that the carrier therefore owed no duty to the plaintiff for the breach of which an action would lie. The other two justices based the decision upon the additional ground, as stated by Justice Johnson, that "when the act

of negligence occurred, the plaintiff was not *in esse,* was not a person, or a passenger, or a human being. Her age and existence are reckoned from her birth." He further said: "We have not been referred to any principle to show that a legal duty has ever been held to arise towards that which is not *in esse* in fact and has only a fictitious existence in law, so as to render a negligent act a breach of that duty." Justice O'Brien, being impressed with a novelty of the case, and not seeing any injustice "in the abstract of such an action being held to lie," said:

"The pity of it is as novel as the case—that an innocent infant comes into the world with the cruel seal upon it of another's fault, and has to bear a burthen of infirmity and ignominy throughout the whole passage of life. It is no wonder, therefore, that sympathy for helpless and undeserved misfortune has led to what is literally a kind of creative boldness in litigation."

But, being even more strongly impressed by the practical difficulties in the application of a rule which appeared to be just in the abstract, and being unwilling judicially to create a right unsupported by sound principle, he said:

"But there are instances in the law where rules of right are found upon the inherent and inevitable difficulty or impossibility of proof. And it is easy to see on what a boundless sea of speculation in evidence this new idea would launch us. What a field would be opened to extravagance of testimony, already great enough—if Science could carry her lamp, not over certain in its light where people have their eyes, into the unseen laboratory of nature—could profess to reveal the causes and things that are hidden there. * * * There may be a question of evidence, Mr. Gerrard modestly put it; but the law may see such danger in that evidence, may have such a suspicion of human ignorance and presumption, that it will not allow any question of evidence to be entered into at all. However, we have to see whether the right claimed exists in the English legal system, or flows out of any admitted principles in that system. The law is in some respects a stream that gathers accretions with time from new relations and conditions. But it is also a landmark that forbids advance on defined rights and engagements; and if these are to be altered, if new rights and engagements are to be created, that is the province of legislation and not of decision."

He finally concluded that the law contained no principle out of which the right to maintain such action could be developed

by any authority short of the legislature, that the law which by fiction severed unborn children from the mother related, except as to inheritance, wholly to personal status and did not include compensation for negligence, and so that the duty of the carrier was to the mother and not to the unborn child.

The Supreme Court of Illinois, in Allaire v. St. Luke's Hospital, 184 Ill., 359, 56 N. E., 638, 48 L. R. A., 225, held that an infant could not recover damages for prenatal injuries. The plaintiff's mother, who had entered defendant's hospital for care at plaintiff's birth, was injured by the negligent operation of an elevator. Plaintiff was born crippled as a proximate result of defendant's negligence. The decision rests primarily upon the ground that the child before birth is in fact a part of the mother. Justice Boggs concluded his elaborate dissent with the expression of the opinion that:

"The law should * * * be that whenever a child *in utero* is so far advanced in prenatal age as that, should parturition by natural or artificial means occur at such age, such child could and would live separable from the mother, and grow into the ordinary activities of life, and is afterwards born, and becomes a living human being, such child has a right of action for any injuries wantonly or negligently inflicted upon his or her person at such age of viability, though then in the womb of the mother."

In Gorman v. Budlong, 23 R. I., 169, 49 Atl., 704, 55 L. R. A., 118, it was held on the authority of the three cases above discussed that demurrer should be sustained to the declaration of the father who brought an action for damages for the death of his child. The child, because of injuries to its mother, was prematurely born and, after living three days, died on account of its premature birth. The statute was similar to the Texas statute in authorizing the action for death only in cases wherein the child, if it had survived, could have maintained an action for its injuries. The court, after quoting at length from the three authorities relied upon, held that "one cannot maintain an action for injuries received by him while in his mother's womb."

The Supreme Court of Missouri, in Buel v. United Railways Company of St. Louis, 248 Mo., 126, 154 S. W., 71, 45 L. R. A. (N. S.) 625, held that no cause of action was stated by the petition of parents suing for the death of their child which, after surviving its birth a few months, died as a result of injuries inflicted before its birth when its mother was negligently caused to fall from a street car. It held that the statute did

not authorize the maintenance of suit for the death of the child because at the time of the enactment of the statute it had been adjudged that a child so injured had no right of action.

In Lipps v. Milwaukee Electric R. & L. Co., 164 Wis., 272, 159 N. W., 916, L. R. A., 1917B, 334, action was brought in behalf of a child injured while a foetus of the age of about five months and before it could have been born viable. The court, after reviewing the authorities, said:

"All, however, so far as expression is found therein, agree that no cause of action accrues to an infant for injuries received before it could be born viable. Such is the present case. The complaint alleges the child could not have been born viable. Since a nonviable child cannot exist separate from its mother, it must, in the law of torts, be regarded as a part of its mother, and hence, being incapable of a separate existence, it is not an independent person or being to whom separate rights can accrue. Its rights are merged in those of the mother of whom it forms a part.

"We go no further than the facts of the case require and hold that no cause of action accrues to an infant *en ventre sa mere* for injuries received before it could be born viable.

"Very cogent reasons may be urged for a contrary rule where the infant is viable, and especially so in cases where the defendant, being a doctor or midwife, has negligently injured an unborn child. As to such cases we express no opinion."

The opinion in Drobner v. Peters, 232 N. Y., 220, 133 N. E., 567, 20 A. L. R., 1503, thus states the case:

"Defendant negligently permitted a coalhole in the sidewalk in front of his premises to remain uncovered. Plaintiff's mother fell into it. Plaintiff, in his mother's womb, sustained injuries. Born eleven days after the accident, he now brings this action."

The court's decision is:

"May this court attach an unnatural meaning to simple words, and hold, independently of statute, that a cause of action for prenatal injuries is reserved to the child until the moment of its birth, and then accrues? The formulation of such a principle of legal liability against precedent and practice may be a tempting task, to which sympathy and natural justice point the way; but I cannot bring myself to the conclusion that plaintiff has a cause of action at common law. The injuries were, when inflicted, injuries to the mother. No liability can arise therefrom except out of a duty disregarded, and defendant owed no duty of care to the unborn child in the present case,

apart from the duty to avoid injuring the mother."

Six justices concurred. Justice Cardozo dissented, but wrote no opinion.

The Supreme Court of Alabama, in Stanford v. St. Louis-San Francisco Ry. Co., 214 Ala., 611, 108 So., 566, followed the authorities above discussed and held that there could be no recovery for the death of a child which lived for several days after its premature birth and died from injuries sustained before its birth.

The principal reasons given in the decisions for denial of recovery in a case like. this are, as briefly stated by Justice Pound in Drobner v. Peters, (supra):

"Lack .of authority; practical inconvenience and possible injustice; no separate entity apart from the mother, and therefore no duty of care; no person or human being *in esse* at the time the accident."

On the other hand, the arguments which have been advanced in favor of recovery are, generally stated: That when the law punishes for murder one who inflicts injuries upon an unborn child from which it dies after having been born alive, it should in reason give the infant which survives the right to recover damages occasioned by the same injuries; that a law which protects the unborn child in inheritance and devise and other rights of property and withholds relief or redress for more serious wrongs which affect its physical well-being is wanting in symmetry and denies the greater right while respecting the lesser; that if the unborn child reaches such stage of development that it could and would live if then born or otherwise delivered from its mother, it should be regarded as a distinct being toward which the duty of exercising care exists; and that on principle and regardless of precedents recovery should be permitted, there being a wrong and consequent injury.

Justice Holmes suggested that there were respectable authorities opposed to Lord Coke's often quoted statement "to the effect that if a woman is quick with child and takes a potion, or if a man beats her, and the child is born alive and dies of the potion or battery, this is murder." (Dietrich v. Northampton, 138 Mass., 14, 52 Am. Rep., 242, 243). He and other authorities doubt that the analogy is useful for determining a rule of civil liability. See: Lipps v. Milwaukee Electric R. & L. Co., 164 Wis., 272, 159 N. W., 916, L. R. A., 1917B, 334; Drobner v. Peters, 232 N. Y., 220, 133 N. E., 567, 20 L. R. A., 1503; Walker v. Great Northern Ry. Co. of Ireland, 28 L. R. Ir., 69, 88.

If we are to support a rule of present civil liability by analogy to criminal law, we should look to the law of this state rather than to a law said to exist in ancient days. Article 1205, Penal Code of 1925, being a part of the chapter entitled "Homicide," has been in effect at least from the time of the adoption of the Penal Code of 1857. It provides:

"The person upon whom the homicide is alleged to have been committed must be in existence by actual birth."

In view of this statute it has been held that one cannot be convicted of homicide of a newly born child unless it is shown that at the time the offense is alleged to have been committed the child had been completely expelled from its mother and that after being thus born it had an independent existence, "that is, that the child breathed, and its blood circulated independent of its mother." Wallace v. State, 10 Texas Ct. App., 255. See also Cordes v. State, 54 Texas Cr. Rep., 204, 112 S. W., 943. Another article of the Penal Code (1195), a part of the chapter entitled "Abortion," prescribes severe penalties for the destruction of the vitality or life in a child in a state of being born and before actual birth. This state, therefore, has not brought unborn children within the protection of its penal statutes defining and prescribing penalties for homicide. In other words, in its laws with respect to homicide it treats the child as having no independent existence as a human being until it has been actually and completely born.

The decisions which protect unborn children in property and property rights but undertake by the indulgence of a fiction of existence to save to the child property which in fairness belongs to it. They do not support the imposition of liability upon others for torts indirectly committed against a prospective human being, one unseen and unknown, and who may never have an independent existence. As said by Justice Pound, in Drobner v. Peters (supra), "Rights of ownership of property do not connote a duty of personal care to the inchoate owner."

It was held in Nelson v. G. H. & S. A. Ry. Co., 78 Texas, 621, 14 S. W., 1021, 11 L. R. A., 391, following decisions construing devises and statutes respecting descent and distribution to enable posthumous children to take property, that the Texas statute giving to "surviving children" a right of action for damages on account of the death of a parent should be construed as including a posthumous child as one of such children. This decision affords little, if any, argument in favor of recovery in the instant case. The child when it is born and lives is in fact a surviving child and comes within the express

language of the statute. Furthermore, a decision permitting such child to obtain its share of the damages awarded for its parent's death is merely in line with the authorities which regard an unborn child as *in esse* even from the time of conception for the purpose of taking an estate and, like those authorities, it has no bearing upon the question of duty and liability for the breach of duty toward an unborn child.

The third argument in favor of recovery raises the question: When does life begin? The text of Corpus Juris thus answers the question: "In civil rights life begins with birth. * * *. In the law of inheritance life begins with conception." 37 Corpus Juris, p. 347. See also 14 R. C. L., p. 216, Sec. 3, where, after the statement of substantially the same rules, it is said that "the legal existence of an unborn child and his capacity to inherit is only tentative and conditional on his subsequently being born alive." It has been shown above that in the law of homicide in this state life begins only when the child has been born and an independent existence established.

State v. Winthrop, 43 Iowa, 519, 22 Am. Rep., 257, holds that a child does not have an independent life and so is not a human being until the establishment of respiration and independent circulation. The opinion contains, among other quotations from decisions and medical works, the following:

"*In foro* the term 'life' must be regarded as perfectly synonymous with 'respiration.' Life means respiration.. Not to have breathed is not to have lived."

The arguments in favor of recovery of damages for injury to an unborn child go no further than to insist that recovery should be had if the injury is suffered at a time when the child has become viable, that is, when it could live apart from its mother. They concede, as of course they must, that up to that time the child is but a part of its mother, and that injury to it is injury to her and not to a separate entity. But how is the exact time for this change of status or being to be determined? There is no suddenly acquired new mode of existence during the course of development. "The foetus is certainly, if we speak physiologically, as much a living being immediately after conception as at any other time before delivery; and its future progress is but the development and increase of those constituent principles which it then received." Beck's Elements of Medical Jurisprudence (10th Ed.), Vol. 1, p. 227. The birth of the child alive affords no satisfactory proof of its viability at the time of a previous injury. Weeks may have elapsed between the injury and the birth. In a given case, then, we are relegated

to scientific or expert testimony, and from it the jury finds whether or not the unborn child had reached at the time of the injury such stage of development that it would have lived if it had then been prematurely born or had been taken from its mother.

However convincing such method of proof may be in an appropriate case, in this character of case it amounts to no more than speculation or conjecture. The partition between life and death is thin even after birth. How can even the most expert mark a line between the viability and the non-viability of an unborn child? This is one of those instances where, in the language of Justice O'Brien, a rule of right may well be "founded upon the inherent and inevitable difficulty or impossibility of proof." (Walker v. Great Northern Ry. Co. of Ireland, supra).

The law must be practical. "Neither does the medical or scientific recognition of the separate entity of the unborn child aid in determining its legal rights. The law cannot always be scientific or technically correct. It must often content itself with being merely practical." (Lipps v. Milwaukee Electric R. & L. Co., supra).

John M. Zane, in the concluding chapter of his excellent book, "The Story of Law," says of the law: "She must have still the standard that was her standard ages ago, the ordinary reasonable man." That man reckons life from the time of birth. His conscious care and solicitude are for the expectant mother and not for the unborn child apart from her. His obligations and his libality in damages for his acts should be measured and determined from his viewpoint.

The argument finally made in support of a right of recovery is that we have here a wrong and an injury, and there should be a remedy. But the law can only be administered in accordance with defined rules and settled principles. Otherwise there would be no standard of conduct. Because of the necessity for a standard, injuries often are suffered for which no relief can be granted. The task is not to undertake in the particular case to do justice in the abstract, but to ascertain whether in accordance with sound principles of the law of torts there is liability.

The existence of duty and breach of duty constitute in the law of negligence the foundation of liability. G. H. & S. A. Ry. Co. v. Kieff, 94 Texas, 334, 60 S. W., 543; Dobbins v. Missouri K. & T. Ry. Co., 91 Texas, 60, 41 S. W., 62; Denison Light & Power Co. v. Patton, 105 Texas, 621, 154 S. W., 540, 45 L. R. A.

(N. S.) 303; St. Louis Southwestern Ry. Co. of Texas v. Pope, 98 Texas, 535, 86 S. W., 5; National Savings Bank v. Ward, 10 Otto (100 U. S.) 195, 25 L. Ed., 621; 30 Texas Jurisprudence, p. 649; 20 R. C. L., pp. 9-11, 26 R. C. L., p. 757; Shearman and Redfield's Negligence (6th Ed.), Sec. 8. Chief Justice Gaines, in G. H. & S. A. Ry. Co. v. Kieff (supra), said: "The negligence which results in an actionable wrong is the failure to discharge a duty owed to the party injured." The Supreme Court of the United States, in National Savings Bank v. Ward (supra), announced the same rule and explained the reason for it when it said:

"The limit of the doctrine relating to actionable negligence is, that the person occasioning the loss must owe a duty, arising from contract or otherwise, to the person sustaining such loss. Such a restriction on the right to sue for a want of care in the exercise of employments or the transaction of business is plainly necessary to restrain the remedy from being pushed to an impracticable extreme. There would be no bounds to actions and litigious intricacies if the ill effects of the negligence of men may be followed down the chain of results to the final effect."

■ Did the defendant owe a duty to the unborn child? We think that, tested by the knowledge, experience and conduct of the ordinary prudent man, it "owed no duty of care to the unborn child in the present case, apart from the duty to avoid injuring the mother."

Good reason is found for denial of the right of recovery in the fact that in many cases it would be impossible to establish except by speculation or conjecture that the death or condition of the child was proximately caused by the injury. But far worse than the indulgence of such speculation and conjecture and the insurmountable difficulty of satisfactorily proving viability, there would follow in the wake of this character of litigation many fictitious claims, with false testimony in their support, which the defendants would always find difficult and often impossible to refute. These considerations, we think, outweigh the denial of justice in the abstract to the meritorious case.

On the authorities cited, and for the reasons given, it is our opinion that the trial court correctly held that defendants in error could not recover damages for the death of the child.

■ The assignments of error, to the effect that the trial court did not correctly submit the issue of unavoidable accident and

erroneously defined, or failed to define, certain terms used in the submission of such issue, are overruled because we find from a careful examination of the record that the evidence does not raise the issue of unavoidable accident.

The case in this particular is ruled by Dallas Railway & Terminal Co. v. Darden (Com. App.), 38 S. W. (2d) 777. In that case it was held that an error of the trial court in the method of submitting the issue of unavoidable accident was harmless because the evidence did not present the issue. Judge Leddy in writing the opinion, thus defined unavoidable accident:

"An unavoidable accident is one which is not occasioned in any degree, either directly or remotely, by the want of such care or prudence as the law holds every man bound to exercise. If the accident complained of could have been prevented by either party, by the use of means suggested by common prudence, it was not unavoidable."

After examining the evidence for the purpose of determining whether it "presented a theory under which the accident could have happened, notwithstanding all the parties to the transaction exercised the degree of care required by law," he concluded that no such theory was presented, in that under the evidence the collision between the street car and the automobile was caused either by the negligence of the plaintiff or by the negligence of defendant's motorman. He pointed out that:

"The collision between the street car and defendant in error's automobile occurred upon a street in broad open daylight, at a time when there were no obstructions of any kind between the street car and the automobile. There was nothing to obstruct the view of defendant in error toward the street car, and the automobile was at all times in plain view of the motorman."

The facts in this case are peculiarly like the facts in that case. Defendants in error alleged and offered evidence which tends to prove that the employee of plaintiff in error negligently drove its truck in such way as to strike the automobile driven by Mrs. Jordan, and thereby caused it to collide with another automobile parked at the curb. Plaintiff in error denied the allegations of negligence on the part of its employee, and alleged that Mrs. Jordan negligently failed to keep a proper lookout, and that such negligence on her part proximately caused and contributed to the accident.

The only evidence offered by plaintiff in error in any way explanatory of the accident was the testimony of its witnesses that the truck did not strike Mrs. Jordan's automobile, but

passed by without touching it, and about five feet from it, and that after the accident there was no mark or dent on the left front wheel of Mrs. Jordan's car where she testified the truck struck it, but that the front of her automobile on its right side was damaged. Thus the evidence offered by plaintiffs in error tended merely to prove that its employee was not negligent and to sustain its allegation that Mrs. Jordan was negligent in failing to keep a proper lookout. It presented no theory under which the accident could have happened notwithstanding the parties to the transaction may have exercised due care.

The accident occurred in the middle of the day on a public street in the city of El Paso. The width of the street is not shown. There is no evidence that the street was rough or the pavement wet, and no suggestion of anything that might have caused the automobile to skid into the automobile parked at the curb. There is no evidence of a congestion or traffic, or of the existence of any obstacle that might have obstructed Mrs. Jordan's view of the parked automobile. The issue of unavoidable accident is not raised when there is no evidence tending to prove that the injury resulted from some cause other than the negligence of one of the parties. Boyles v. McClure (Com. App.), 243 S. W., 1080. There is no evidence from which it can reasonably be inferred that the injury to Mrs. Jordan was caused by anything other than her own negligence in driving her automobile into the parked automobile or the negligence of the driver of plaintiff in error's truck in striking Mrs. Jordan's automobile. If the jury had answered that the injury was the result of an unavoidable accident, its finding would have been supported by nothing stronger than surmise or suspicion.

In Dallas Railway & Terminal Co. v. Garrison (Com. App.), 45 S. W. (2d) 185, the issue of unavoidable accident was presented by evidence that the street was rough and that plaintiff's automobile skidded; and in El Paso Electric Ry. Co. v. Hedrick (Com. App.), 60 S. W. (2d) 761, the issue was raised by testimony that the motorman did not see plaintiff's motorcycle until it was within five or six feet from him, when it was too late for him to stop the car, and that the motorman's view of the motorcycle was obstructed by an automobile until the motorcycle came suddenly and without warning from behind the obstruction.

Since the issue of unavoidable accident is not in the case, it is unnecessary to determine whether or not there were errors in the manner in which the issue was submitted to the jury.

The judgment of the Court of Civil Appeals affirming the judgment of the trial court for $5,000 on account of the injuries to Mrs. Jordan is affirmed; and the judgment of said court for $1,250 and interest as damages for the death of the child is reversed and the judgment of the trial court that defendant's in error take nothing by their suit for such damages is affirmed.

Opinion adopted by Supreme Court January 23, 1935.