INTERNATIONAL-GREAT NORTHERN RAILROAD CO. V. MRS. MARY LUCAS ET AL.

No. 6751.   Decided December 9, 1936.
Motion to correct judgment granted January 13, 1937.
(99 S. W., 2d Series, 297; 100 S. W., 2d Series, 97.)

*Sewell, Taylor, Morris & Garwood,* of Houston, and *B. F. Davis,* of Jacksonville, for plaintiff in error.

The provisions of the contract as to liability for injury and death of agents and employees of the contractors constituted a complete bar to plaintiff's suit as a matter of law. Missouri K. & T. Ry. Co. v. Carter, 95 Texas, 461, 68 S. W., 159; Sullivan-Sanford Lbr. Co. v. Watson, 106 Texas, 4, 155 S. W., 179; Hicks v. Gulf, C. & S. F. Ry. Co., 212 S. W., 840, error refused.

On the question of the res ipsa rule. Harris v. Missouri, K. & T. Ry. Co., 283 S. W., 895; Texas Co. v. Clark & Co., 182 S. W., 351.

On question of unavoidable accident. Galveston, H. & S. A. Ry. Co. v. Washington, 94 Texas, 510; 63 S. W., 534; Dallas Ry. & Ter. Co. v. Allen, 43 S. W. (2d) 165.

*Seale & Thompson, Norman & Norman, King, Wood & Morrow* and *H. E. Cox,* all of Houston, for defendants in error.

The provision of the contract limiting the liability for in-

juries to agents and employees of the contractor had no application to the death of a member of the firm of contractors, but only to the agents and employees of said firm. Wallace v. U. S. (Draper Engine Works), 16 Fed. (2d) 309; National Surety Co. v. Roth, 232 S. W., 737; 2 C. J., 425.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

This is an action against the International-Great Northern Railroad Company for damages on account of the alleged negligence of the company which is claimed to have caused the death of Luke L. Lucas, who was fatally injured when two motor cars, on one of which Lucas was riding at the time, came in collision while they were being operated on the main-line track of the company's railroad. The case was tried before a jury, on special issues, resulting in a judgment for the plaintiffs. The judgment has been affirmed by the Court of Civil Appeals. 70 S. W. (2d) 226.

Luke L. Lucas was a member of the firm of Lucas and Lucas, a copartnership composed of himself and G. E. Lucas. The firm, as independent contractor, was under contract with the company to construct a number of roadbeds for new side tracks along the mainline of the company's railroad, south of and in the town of Kilgore. In the contract the company agreed to furnish Luke Lucas transportation over its lines of railroad in matters pertaining to said construction work. On the day of the accident the construction work was in progress, and had been for some time. Luke Lucas, in behalf of the firm, had charge of the work. One Leroy Elledge, a servant of the company, had supervision of the work, as supervising engineer, in behalf of the company. Among his duties, as the servant of the company, was that of seeing that the work was being done in conformity to the contract. The company had furnished him a small, two-man motor car to be used and operated by him over the company's railroad tracks, in performing his duties. On the occasion in question Elledge was driving the motor car, and Luke Lucas was on the motor car with him. The day the accident occurred, Elledge, accompanied by Lucas, left Kilgore on the motor car for the purpose of inspecting the construction work that was in progress at various places south of Kilgore. The several inspections having been made, he and Lucas were returning to Kilgore when the accident occurred. The accident occurred late in the afternoon. The other motor car involved in the collision was coming south from Kilgore, and was being

driven by one Zay Gardner. Gardner, as an independent contractor, was under contract with the company to lay the rails on the roadbeds which were constructed by Lucas and Lucas. He had established a camp some distance south of Kilgore where he and his employees stayed at night. The company had furnished him the motor car, and the trailer which was attached to the motor car at the time of the accident, for use by him, over the company's railroad tracks, in transporting himself and his employees to and from their work. On the day of the accident, Gardner, with his employees who were riding on the trailer when the accident occurred, had been engaged in laying the rails on roadbeds in Kilgore, which the firm of Lucas and Lucas had completed; and at the time of the accident were returning to the Gardner camp for the night. Except as might be inferred from the foregoing facts, there was no testimony to show that the negligence of the company caused Lucas to be fatally injured. Nor was there any testimony to show the absence of negligence on the part of the company. Other testimony will be stated in a proper connection later on in this opinion.

The first question raised by the company involves the following provisions of the construction contract between the company and the firm of Lucas and Lucas, viz:—

"In consideration of the covenants and agreements herein contained, it is agreed by Lucas & Lucas, a co-partnership, of Cushing, Texas, herein called 'the Contractor,' and the International-Great Northern Railroad Company, herein called 'the Company,' as follows: * * * 5. The contractor agrees to assume all liabilities for or on account of injuries to or deaths of the agents and employees of the contractor * * * which may occur during the transportation of said persons * * * over the lines of the company * * * whether said injuries or death of said persons shall have been occasioned by anything whatsoever, whether by reason of the negligence of the agents and employees of the company, or by reason of the operation of the trains, cars, and engines of the company or otherwise; and the contractor agrees to indemnify and save harmless the company from all claims, expenses and damages, or recoveries of anything, the liability for which is assumed by the contractor."

■ It is contended that, by virtue of these indemnity provisions, the company stands released from all liability for the death of Luke Lucas. In support of this contention it is argued that since Luke Lucas, as a member of the firm of Lucas and Lucas, became individually bound by the above provisions to indemnify

the company against loss on account of the death of any of the agents of the firm; and since, by virtue of the partnership relation, he, on the occasion in question, was engaged in the business of the firm as its agent; the conclusion follows that he was bound to indemnify the company against loss on account of his own death. Regardless of all other considerations, the conclusion is false for the reason that the second premise is untrue. It is not the law that a man can be the agent of himself. In attending to the business of the firm, Luke Lucas was acting for himself and as the agent of his copartner. The firm, as such, did not have independent legal existence, with legal capacity to have an agent. In law and in fact, the term "agents and employees of the contractor," as used in the foregoing provisions, means the agents and employees of Luke Lucas and G. E. Lucas, as copartners, and does not include either partner.

The trial court submitted to the jury Special Issue No. 1, among other special issues, which reads as follows:

"No. 1. Was the collision of the motor cars in question due to the negligence of the agents, servants or employees of the defendant in charge of the operation thereof, as the term 'negligence' is herein defined?"

■ The company contends that the submission of this special issue to the jury constitutes error, for the reason that the rule of evidence known as the res ipsa loquitur rule does not apply to the facts of this case. Such rule is thus stated in Washington v. Missouri, K. & T. Ry. Co., 90 Texas, 314, 38 S. W., 764:

"Where the particular thing causing the injury has been shown to be under the management (and control) of the defendant, or his servants, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of any explanation, that the accident arose from want of care."

In Texas & Pac. Ry. Co. v. Kowsikowsiki, 103 Texas, 173, 125 S. W., 3, it is pointed out that the prime consideration in determining the applicability of the above rule is whether or not "the thing which caused the death in question was under the exclusive management and control of the defendant."

■ In the present instance, the thing which caused the death of Lucas was the two motor cars involved in the collision. This seems to be conceded by counsel for the company, but it is

vigorously urged that there is no evidence to show that the two motor cars were under the exclusive management and control of the company. We shall take up first the contention as it relates to the Gardner motor car and trailer. It is not denied that the company was in control of its railroad and was operating same at the time. It is not disputed that Gardner, as an independent contractor, was engaged in performing certain construction work for the company, and that the company had furnished him the motor car and trailer for the purpose of being operated by him over the tracks of the company's railroad, in transporting himself and his employees to and from their work; and that the motor car and trailer were being so used on the occasion in question. Being in control of its railroad, the company was responsible for its operation. The operation of a motor car, over the tracks of the company's railroad, with the consent of the company, is as much a part of the operation of the railroad as is the operation of a steam locomotive or a passenger train. This being so, Gardner, so far as third persons were concerned, was, to all legal intents and purposes, the servant of the company intrusted with the duty to operate the motor car and trailer over the company's railroad tracks. The motor car and trailer, therefore, were under the exclusive management and control of the company on the occasion in question. Gulf, C. & S. F. Ry. Co. v. Miller, 98 Texas, 270, 83 S. W., 182; Trinity Valley & N. Ry. Co. v. Scholz, 209 S. W., 224, and cases there cited.

With reference to the motor car that was being driven by Elledge, at the time of the collision, the testimony shows, without dispute, that he was operating the motor car as the servant of the company, in the performance of his duties as servant, and that the company had furnished him the motor car for such purpose. There is no testimony which tends to show that Lucas had any right to control, in any degree, the operation of said motor car, unless the testimony of Elledge, now to be stated, has that effect. In this respect the testimony of Elledge was to the following effect: The motor car had been furnished to the witness by the company to be used by him in performing his duties as servant of the company, in relation to the construction work called for by the Lucas and Lucas contract. Whenever he went to inspect such work, Luke Lucas always accompanied him. The witness said that he and Lucas had joint control of the motor car. As furnishing the basis for this conclusion, the witness said that while on these trips of inspection, sometimes the witness would drive the motor car,

and sometimes Lucas would drive it. Sometimes, while on these inspection trips, one would want to go first to one place where the construction work was going on, while the other would want to go first to a different place where the work was going on. This difference of desire was always adjusted by one yielding to the wishes of the other. To use the words of the witness, he and Lucas "worked in a spirit of accommodation." It is to be seen at once, that this testimony goes no further than to show that the two observed the rules of common courtesy toward each other in respect to the order in which the various pieces of work should be inspected. It does not tend to show that the company had given Lucas any authority to control the management and operation of the motor car. According to the record before us, the undisputed testimony shows that Elledge, as the company's servant, had charge of the motor car and, so far as Lucas was concerned, had the exclusive right to control its operation. The motor car, therefore, was under the exclusive management and control of the company on the occasion in question.

There was some testimony, given by Elledge, which tended to show that, on the occasion in question, Lucas failed to keep a reasonable look out along the track in the direction the motor car was moving. Counsel for the company contends that this testimony shows that Lucas was guilty of contributory negligence in the respect shown. It is argued that for this reason the res ipsa rule does not apply to this case. As we have seen, this rule respects the management and control of the thing which caused the injury. The rule has nothing to do with the matter of contributory negligence of the injured person in some other respect. Such contributory negligence may, notwithstanding the negligence of the company in the first mentioned respect, defeat a recovery against the defendant, but it does not affect the application of the res ipsa rule. This rule is not to be confused with the well known rule which puts upon the plaintiff in a negligence case the burden to clear himself of the negligence which his own case imputes to him. In passing from this subject we notice that the fact issue which the above testimony raised was submitted to the jury, in another special issue, and the jury's answer to the special issue exonerates Lucas.

From what has been said, it follows that the contention that the res ipsa rule does not apply to this case should be overruled.

■ The company duly requested the submission of a special issue calling for a finding as to whether or not the collision was an unavoidable accident. The issue of unavoidable accident is not raised in this case, for the reason that there is no testimony to show that the accident would have happened as it did, even if both Lucas and the company were exercising due care. In Dallas Ry. & Ter. Co. v. Darden (Com. App.), 38 S. W. (2d) 777, the following rule is laid down as a guidance in deter-mining whether the issue of unavoidable accident is raised: "In order to determine whether such issue is involved, the facts of each particular case must be examined with the view of ascer-taining whether there is presented a theory under which the accident could have happened, notwithstanding all parties to the transaction exercised the degree of care required by law." This rule has been followed and applied in Orange & N. W. Ry. Co. v. Harris, 127 Texas, 13, 89 S. W. (2d) 973; Thurman v. Chandler, 125 Texas, 34, 81 S. W. (2d) 489; Magnolia Coca Cola Bottling Co. v. Jordan, 124 Texas, 347, 78 S. W. (2d) 944, 97 A. L. R., 1513.

■ The trial court submitted to the jury a number of special issues including Special Issue No. 1 set out above. In connec-tion with the special issues so submitted, the court charged the jury as follows:

"The burden of proof is upon the plaintiffs as to the special issues herein submitted, which burden must be discharged by the plaintiffs by a preponderance of the evidence, as the term is herein defined."

In due season the company objected to this charge for the reason that same "does not instruct the jury as to whether the burden is upon the plaintiffs to establish the affirmative or negative of such issues and furnishes no guide as to where the burden of proof rests upon any particular issue." The charge is manifestly defective in the respects shown in the objection, and the objection sufficiently points out the error complained of, as Article 2185 of the statutes requires. We accordingly hold that the trial court erred in overruling the objection. The company did not waive the objection by failing to prepare and request the submission of a special charge correcting the error pointed out by the objection. Gulf, C. & S. F. Ry. v. Conley, 113 Texas, 472, 260 S. W., 562, 32 A. L. R., 1183; Robertson & Mueller v. Holden (Com. App.), 1 S. W. (2d) 570; Harris v. Leslie, 128 Texas, 81, 96 S. W. (2d) 276.

In view of all that has been said in this opinion the question

as to whether or not, on the occasion in question, the relation of the company to Lucas was that of common carrier, becomes immaterial. We therefore do not pass on that question. The assignment presenting the error just discussed is sustained; all other assignments contained in the application are overruled.

The judgment of the trial court and that of the Court of Civil Appeals are reversed and the cause is remanded.

Opinion adopted by the Supreme Court December 9, 1936.

### ON MOTION TO CORRECT JUDGMENT.

In our original opinion, filed December 9, 1936, in the above cause, the judgment of the trial court and that of the Court of Civil Appeals were ordered reversed and the cause remanded. G. E. Lucas, one of the defendants in error, has filed a motion to correct our opinion in the respect stated, to the extent of affirming the judgment of the trial court and that of the Court of Civil Appeals in so far as the cross action by the plaintiff in error against G. E. Lucas is involved. To the extent stated, the motion is granted, and our original opinion is here now corrected and amended so as to show, as was originally intended, that the judgment of the trial court and that of the Court of Civil Appeals are affirmed, so far as the cross action of the plaintiff in error against G. E. Lucas is involved; but in all other respects the judgments of both said courts are reversed and the cause is remanded. The clerk is directed to correct the judgment of this court accordingly.

Opinion adopted by the Supreme Court January 13, 1937.