Appellant's petition stating no cause of action, we recommend the question certified be answered that the trial court properly sustained a general demurrer thereto.

CURETON, C. J.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

TEXAS & P. RY. CO. v. EDWARDS et al.

No. 1428–5631.

Commission of Appeals of Texas, Section A.

March 4, 1931.

478

Douthit, Mays & Perkins, of Sweetwater, and J. M. Caldwell, of Midland, for plaintiff in error.

Beall, Beall & Beall, of Sweetwater, for defendants in error.

CRITZ, J.

The defendants in error, Will P. Edwards and W. H. Hightower, brought this suit in the district court of Midland county, Tex., against Texas & Pacific Railway Company, for damages to a herd of cattle belonging to them, alleged to have occurred at a railroad crossing near the town of Midland, in Midland county, Tex. The case was submitted to a jury on special issues in the trial court, and, on the answers of the jury to such issues, judgment was entered for Edwards and Hightower for the sum of $1,760; being $495 for 97 head of cattle injured and the balance for 30 head killed. The railway company appealed to the Court of Civil Appeals, which court affirmed the judgment of the trial court. 21 S.W.(2d) 754, 756. The case is in this court on writ of error granted on application of the railway company. We refer to the opinion of the Court of Civil Appeals for a further statement of the case and the issues involved. However, we will make such further statement in the course of this opinion as is necessary to make plain our holding.

Edwards and Hightower alleged various acts of negligence on the part of the railway company and its servants, and the railway company alleged various acts of contributory negligence on the part of Edwards and Hightower. These issues both ways were submitted to the jury by various special issues in substance shown in the opinion of the Court of Civil Appeals.

The opinion of the Court of Civil Appeals shows: "By the bills of exceptions it is shown that James H. Beall, Jr., in his open-ing address to the jury, used the following language: 'The plaintiff cannot hope to recover from the defendants if the plaintiffs have been guilty of contributory negligence;' and at another time said: 'The issues of contributory negligence submitted in the court charge are defendant's issues, and that W. W. Beall, of counsel for appellees, made this statement to the jury: "The plaintiff cannot expect to recover anything from the defendant if you answer special issue number nine in the affirmative;" ' and, upon objection being made and overruled, he made the further statement: 'I repeat that plaintiff cannot recover from the defendant in the event you answer special issue number Nine in the affirmative.' "

■■ The Court of Civil Appeals holds that the above argument and remarks on the part of counsel for Edwards and Hightower present no reversible error, because the effect thereof was only to tell the jury what they already knew. The Court of Civil Appeals is correct in holding that a case should not be reversed because an attorney tells the jury the result or effect of their answers to special issues where the issues are such that they are presumed to know such result or effect. We think, however, that the Court of Civil Appeals is in error in holding that the jury is presumed to have known the result or effect of their answers to the issues submitting the defenses of contributory negligence in the instant case. In other words we will not presume that this jury would have known the effect of their answers to the issues of contributory negligence here submitted had they not been told. An examination of the record discloses that there were eighteen special issues submitted to the jury. Most of these eighteen issues were in turn subdivided. Of the eighteen main special issues submitted nine involved questions of contributory negligence on the part of Edwards and Hightower. These nine special issues as submitted by the court were:

Special issue No. 9. "(a) Did the plaintiffs, their servants and employees, on approaching said railroad crossing, fail to exercise ordinary care to keep a lookout for the approach of trains from the direction that said train did come? Answer yes or No."

Special issue No. 10. "(a) Did the plaintiffs, their servants, agents and employees, on reaching said railroad crossing, fail to exercise ordinary care to look for the approach of trains from the direction that said train did come? Answer Yes or No."

Special issue No. 11. "(a) Did the plaintiffs, their servants, agents and employees, while said cattle were passing over said railroad crossing, fail to exercise ordinary care to keep a lookout for the approach of trains? Answer Yes or No."

Special issue No. 12. "(a) Did the plaintiffs, their servants, agents and employees, in moving said cattle across said railroad track, fail to exercise ordinary care to listen for the approach of trains from the direction said train did come? Answer Yes or No."

Special issue No. 13. "(a) Did the plaintiffs, their agents, servants and employees, on reaching said railroad crossing, fail to exercise ordinary care to listen for the approach of trains from the direction that said train did come? Answer yes or No."

Special issue No. 14. "(a) Did the plaintiffs, their agents, servants and employees fail to exercise ordinary care to have a sufficient number of men stationed at said crossing to keep the cattle off of the tracks of the defendant on the approach of the train? Answer Yes or No."

Special issue No. 15. "(a) Did the plaintiffs, their agents, servants and employees fail to exercise ordinary care to drive said cattle off the tracks after they discovered the approach of the train? Answer Yes or No."

Special issue No. 17. "(a) Did the plaintiffs, their agents, servants and employees fail to exercise ordinary care to drive said cattle off the tracks after they discovered the approach of the train, or by the exercise of ordinary care should have discovered the approach of said train? Answer Yes or No."

Special issue No. 18. "(a) Did the plaintiff in charge of said cattle fail to exercise ordinary care to ascertain from the agent of the defendant at Midland, Texas, of the approach of trains to the crossing where the accident occurred before attempting to pass the cattle over said crossing? Answer Yes or No."

The jury answered all of the above issues in favor of the plaintiff.

It seems to be conceded by the opinion of the Court of Civil Appeals that ordinarily it is reversible error for counsel to tell the jury the legal result or effect of their answers to special issues. This holding is correct. The Court of Civil Appeals holds that in this particular case the rule does not apply because the jury knew the legal effect of their answers to the issues of contributory negligence before they were told, citing Galveston, H. & S. A. R. Co. v. Harling (Tex. Com. App.) 260 S. W. 1016; McFaddin v. Hebert, 118 Tex. 314, 15 S.W.(2d) 213. We think these cases support the rule that a case will not be reversed because of improper argument in telling the jury the result or effect of their answers to special issues where the issues are such that they will be presumed to have already known such result or effect, but these cases are not authority for holding that the issues here involved are such that the jury must have already known the effect of their answers thereto.

The trial court submitted to the jury the issue as to whether the collision of the train with the cattle was the result of an unavoidable accident. Also the trial court instructed the jury that the burden of proof was on the railway company to establish, by a preponderance of the evidence, the affirmative of such issue. The railway company duly excepted to the charge placing the burden of proof on it. The Court of Civil Appeals correctly holds this charge on burden of proof error, but holds the error harmless because the evidence does not raise the issue of unavoidable accident. We think the Court of Civil Appeals was in error in holding that the evidence does not raise the issue of unavoidable accident.

J. D. Berry, the engineer in charge of the engine testified in substance: That the time the train reached the slow flag signal, which was about three-quarters of a mile from the crossing, he reduced the speed of the train to 25 or 30 miles per hour; that the train was moving at a speed of 15 miles per hour at the time he reached the crossing; that he was keeping a lookout as the train approached the crossing, and did not see the cattle until he got to within 125 feet of the crossing; that the reason he did not see the cattle sooner was on account of the blowing dust and sand; that upon reaching the slow flag signal, one long and two short blasts of the whistle were sounded; that upon reaching the crossing board two long and two short blasts of the whistle were sounded; that, when he first saw the cattle on the crossing, he applied the air in emergency, opened the air sander, and whistled the stock alarm, and that was all he could do; and that the train could not have been stopped within the distance after he saw the cattle.

J. R. Manion, the fireman, testified that the whistle was sounded at the slow flag signal; that the road crossing and stock alarms were sounded; that on passing the slow flag signal the speed of the train was reduced to 25 or 30 miles an hour and not increased at any time to the time of the collision; that he was keeping a lookout; that he did not see the cattle until within about 125 feet of the crossing; that the bell began ringing at the crossing board and kept ringing until after the cattle were struck; that he did not see the cattle sooner on account of the dust and sand in the air; that as soon as he saw the cattle he put out the fire, and the engineer applied the air and put the engine on the sand.

W. C. Tatum testified that a severe sandstorm was blowing at the time of the accident. F. H. Bailey testified to the same effect. Also the witness Franklin testified that the sand was sufficient to prevent the operatives of the train from seeing the cattle. Franklin further testified that he had a good vision, and that he did not believe a cow could be seen 100 yards at the time.

The evidence on the part of the railway company was sufficient for the jury to have found that it was not negligent, and that the cause of the accident was a sandstorm raging at the time, and that such sandstorm obscured the view of the crossing so that the engineer and those in charge of the train could not see the cattle. The evidence on the part of Edwards and Hightower was sufficient to show that they were not negligent in driving their cattle across the track at the time and under the circumstances. If neither party was negligent, and the collision occurred without fault to either party, then the accident would in law be classed as unavoidable. Galveston, H. & S. A. Ry. Co. v. Gormley (Tex. Civ. App.) 35 S. W. 488; 39 Cyc. vol. 39, p. 666. We think the evidence raises such issue.

The other issues presented will not probably occur in another trial, and we pretermit any discussion thereof.

We recommend that the judgments of the Court of Civil Appeals, and of the district court be both reversed, and the cause remanded to the district court for a new trial.

### CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.