**GLAZER v. WHEELER et al.**

No. 5015.

Court of Civil Appeals of Texas. Amarillo.

May 1, 1939.

Rehearing Denied June 26, 1939.

Thompson, Knight, Baker, Harris & Wright, J. Hart Willis, and William A. Rembert, all of Dallas, and Lightfoot, Robertson, Gano & Johnston, of Fort Worth, for appellant.

Burford, Ryburn, Hincks & Charlton, Haney, Craig, DeShazo & Hyde, and Francis M. Chaney, all of Dallas, for appellees.

FOLLEY, Justice.

Mrs. Nona Wheeler, a widow, filed this suit against Joseph Glazer, doing business under the trade name of Uncle Jo Bottling Works, and the Dallas Railway & Terminal Company, a corporation, to recover damages alleged to have been sustained by her in a collision between a street-car belonging to the Dallas Railway & Terminal Company, in which she was riding as a passenger, and a truck owned by Joseph Glazer. We shall designate the parties as they were known in the trial court.

The collision occurred on October 17, 1936 in heavy traffic at the intersection of Young and Austin Streets in the City of Dallas. The truck of the defendant Glazer was traveling west on Young Street and the street-car of the defendant railway company was traveling north on Austin Street. A brick building stood at the southeast corner of this intersection. There was a double set of street-car tracks at this point on Austin Street. At the time of the collision another street-car of the defendant railway company was traveling south on the west side of Austin Street. Although the testimony as to the position of this south bound car is somewhat conflicting it was determined by the jury that this car had entered the intersection of the two streets after the north bound street-car had entered such intersection.

The plaintiff alleged various acts of negligence against each of the defendants as being the proximate cause of her injury and sought judgment against both defendants jointly and severally. Neither of the defendants alleged or proved any contributory negligence upon the part of the plaintiff, but each of the defendants attempted by pleadings and proof to shift the responsibility to the other, and each defendant sought contribution over against the other in the event the plaintiff recovered judgment. The court submitted various issues as to the negligence of each of the defendants and inquired as to whether or not such negligence was a proximate cause or the sole proximate cause of the collision. The jury found that the entrance of the south bound street-car into the intersection after the north bound car had entered such intersection was negligence, but found that such negligence was not the sole proximate cause of the collision. This issue was based not upon the allegations of the plaintiff but upon the allegations of the defendant Glazer who alleged only that such act was the sole proximate cause of the collision. Therefore no issue was submitted as to this act being a proximate cause of the collision. Other than this finding the jury completely exonerated the defendant railway company of any negligence, but found the defendant Glazer guilty of seven distinct acts of negligence each of which was also found to be a proximate cause of the collision. The jury assessed the damages in the sum of $8,500.

Based upon this verdict of the jury the court rendered judgment in favor of the plaintiff and against the defendant Glazer for the sum of $8,500 but denied the plaintiff any recovery against the defendant railway company. The court also denied the defendant Glazer's claim for contribution against the railway company. From such judgment Glazer appealed to the Court of Civil Appeals for the Fifth Supreme Judicial District of Texas at Dallas. The Supreme Court of Texas thereafter transferred the cause to this Court and the case is now properly before us.

In connection with the assignments which follow we wish to state that it is our opinion the evidence was sufficient to have sustained a finding of negligence on the part of the railway company if the jury had so found. There was also sufficient testimony to have sustained a finding that such negligence was a proximate cause of the collision. It is also our opinion that the pleadings of the defendant Glazer were sufficient to raise the question of contribution between him and the railway company and that such pleadings were sufficient to have shifted the entire responsibility upon the railway company if the jury's findings had concurred with Glazer's allegations. 10 Tex.Jur. 563, para. 21.

The trial court defined "ordinary care", "negligence" and "proper look-out", as follows:

"By the term 'ordinary care' as that term is used in this charge, is meant that degree of care that would be exercised by a person of ordinary prudence under the same or similar circumstances.

"By the term 'negligence' as that term is used in this charge, is meant a failure to use ordinary care.

"By the term 'proper lookout' as the same is used in this charge is meant such a lookout as a person of ordinary prudence would exercise under the same or similar circumstances."

The defendant Glazer presents as error the submission of the issues of negligence charged against his codefendant under the above definitions because the pleadings and the evidence showed that the plaintiff was a passenger on the street-car of the defendant railway company. He asserts that under such circumstances the railway company was charged with a high degree of care in the protection of its passengers; that the railway company was charged with that degree of care which would be exercised by a very cautious and prudent person under the same or similar circumstances; that such burden of care was nowhere in the court's charge placed upon the railway company, but that the same degree of care was placed upon Glazer as was placed upon the railway company; that such action on the part of the court permitted the jury to allow the railway company to escape liability by submitting a lower degree of care than that required of it by law, all of which was prejudicial to the rights of the defendant Glazer; that if the proper burden of care had been placed upon his codefendant the jury might have reached a different conclusion as to the negligence of the railway company; that in such event all the liability might have been placed upon the railway company and thus discharged Glazer of any liability or the jury might have found both of the defendants guilty of such negligence as would have proximately caused the collision; and that in the latter event the defendant Glazer would have been entitled to contribution from his codefendant for one-half of the amount of the judgment.

In the case of Dallas Railway & Terminal Co. v. Travis et al., 125 Tex. 11, 78 S. W.2d 941, 942, wherein the plaintiff therein sued the defendant for injuries received by her while a passenger on the street-car of the defendant, it is said: "It is the settled rule in this state that street railway companies are common carriers of passengers, with duties and responsibilities the same as those of a railroad company carrier of passengers, and are required to exercise a high degree of care and skill in their transportation by providing suitable tracks, rolling stock and appliances, and in the management of their business and movement of their cars." (Citing numerous authorities.)

In the Travis case the court gave the same definition of ordinary care as was given in the instant case. Following such definition the trial court in the Travis case gave the jury the following instructions: "It was the duty of the plaintiff upon the occasion in question to use 'ordinary care' for her own safety, and a failure, if any, to do so, was negligence of the plaintiff. * * * It was the duty of the defendant upon the occasion in question to use a high degree of care as that term has been defined hereinabove, to avoid injuring plaintiff and a failure, if any, to do so, was negligence of the defendant." The defendant therein objected to such instructions on the ground that they constituted a general charge, that such instructions were on the weight of the evidence and gave undue prominence to the degree of care to be used. In disposing of the assignment thus raised the Commission of Appeals in the Travis case further said (page 943): "Having defined 'ordinary care' as applicable to Mrs. Travis, it was necessary for the court to define 'high degree of care' as applicable to the company. As said by the Court of Civil Appeals: 'It could hardly be said that there was an error of law in defining 'negligence' by the declaration of such existing duty, the measure of care required to discharge such duty, and the statement that the failure to exercise such care was negligence. In this case two different standards of conduct were involved—ordinary care as applied to the appellee and a high degree of care as applied to the street railway company. Previous to the paragraph of the charge complained of, the court had defined a high degree of care, negligence, and ordinary care, but had not informed the jury under what circumstances nor to whom nor how to apply the rule of negligence for failure to exercise a high degree of care, nor the rule of negligence for failure to exercise ordinary care. It was necessary for the court to give the jury

some instruction to guide them when applying these two different standards. In order to distinguish between these different kinds of negligence, the court first told the jury that it was the duty of the injured woman to use ordinary care for her own safety, and that a failure to do so was negligence on her part, and that it was the duty of the street railway company to use a high degree of care to avoid injuring plaintiff, and that a failure to do so was negligence on its part. The court properly explained to the jury the different rules to be observed by them in determining whether the injured woman was negligent and in determining whether the street car company was negligent. We do not think it can be said that a general charge was given, merely because the court stated the difference in the kind of negligence referred to therein as based on the legal duty of the respective parties sought to be charged with negligence. Neither did the charge give such undue emphasis to the degree of care to be exercised by the defendant as was calculated to prejudice its rights." (Citing authorities.)

In the case of Fort Worth & D. C. R. Co. v. Lovett et ux., Tex.Civ.App., 263 S. W. 643, 644, the trial court therein gave the following instruction to the jury: "It was the duty of defendant's agents and servants in charge of the train, to use, for the safety of the passengers thereon, such high degree of care as would be used by cautious, prudent and competent persons under similar circumstances, and a failure to use such care would be negligence." Following such instruction the court submitted special issues on negligence. Under such circumstances this court held that such instruction was a definition and not a general charge. The action of this court in this matter was cited with approval by the Commission of Appeals in the Travis case, supra.

▮ While it is true that the above rule was announced as applicable between a plaintiff as a passenger and a defendant as a carrier, still, we know of no rule of law nor of any good reason which would deprive a non-carrier codefendant of the benefits of the rule. Since each of the defendants asked for contribution against the other and further sought to shift the burden of the issues of negligence to the other, such defendants assumed the respective relationships of plaintiff and defendant in the controversy between each other.

▮▮ Under the common law the general rule denies the right of contribution between join tort-feasors who are equally guilty of wrong. But even under the common law the right of contribution is available to a wrongdoer who is merely passively guilty as against one who is actively guilty of wrong. In such case "the principal delinquent may be held responsible to his codelinquent for damages incurred by their joint offense." 13 Am.Jur. 42, para. 46. The common law rule with reference to joint tort-feasors who are equally guilty of wrong has been superseded by statute in Texas and in many other jurisdictions. Where the right of contribution is recognized either by statute or under the common law the defendant to whom the remedy is accorded has the right to be protected against an unfair exaction prior to judgment or the payment of compensation awarded by the judgment. In 13 Am. Jur. 52, para. 56, it is said: "Even though a cause of action for contribution does not become complete until the claimant's act of payment, generally a right to be protected against an unfair exaction—an incidental or inchoate right to compel contribution—comes into being and becomes the property right or interest of a tort-feasor the instant the joint or concurring acts of himself and other tort-feasors give to the injured person a cause of action against them—in other words, when the common liability arises. Such right is an incident, in a sense, which follows the principal event out of which the injured person's cause of action arises, and once in being, although contingent, subordinate, or inchoate, it is none the less real and subsisting, but has an existence in contemplation of law until it is no longer needed as a resource to which the joint tort-feasor may look for relief from an imposition upon him of an inequitable share of the burden on account of the joint tort, provided he does not, in the meantime, waive or give up such right."

The statute in Texas which affords the right of contribution between tort-feasors in pari delicto is article 2212 R.C.S. of 1925, which in part is as follows: "Any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of, or based on tort * * * shall, upon payment of said judgment, have a right of action against his co-defendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in

said judgment rendered to the whole amount of said judgment."

It will be noted that the language of this statute does not expressly provide any relief for a defendant in advance of the payment of the judgment. Regardless of this omission the weight of authority in Texas is to the effect that in advance of the rendition or payment of a judgment certain implied rights not expressly provided in the statute are available to the defendant. One. of these is that where the plaintiff in the case did not elect to sue all the tort-feasors the defendant sued may implead the other wrongdoers and enforce contribution provided he does not unduly delay or otherwise prejudice the plaintiff's case. This principle of law was announced by the Commission of Appeals of Texas in Lottman v. Cuilla et al., 288 S.W. 123, 126. In that case one of the defendants sought to make the City of Houston a co-defendant for the purpose of contribution although the plaintiff in the case had not sued the City of Houston. The trial court sustained a general demurrer to such pleading. The Commission of Appeals held this action was error. Judge Speer, in the course of the opinion in that case, said: "This clearly recognizes the principle of enforced contribution amongst joint tort-feasors, thus changing the common-law rule upon that subject. It is true literally the statute applies to judgments rendered against two or more wrongdoers. But the evident purpose of the act was to relieve the rigor of the common law, so as to place the burden, as amongst themselves, equally upon all the solvent tort-feasors. There is no reason to hold the Legislature meant to exclude from the benefits of the statute those cases where, as here, the plaintiff did not elect to sue all the tort-feasors; but every consideration impels us to hold that the defendant sued may, and should be allowed to, bring in other wrongdoers, provided he does so in such way as not to delay or otherwise prejudice the plaintiff's case. In the present instance, there seems to be no contention that the plaintiff's case was in any way prejudiced by the presence of the city of Houston as a defendant. Indeed, the city has been dismissed upon its own demurrer."

This same rule was announced in the case of Gattegno v. The Parisian et al., Tex.Com.App., 53 S.W.2d 1005, 1007. In that case The Parisian, a mercantile corporation, sued Gattegno and Muir for damages in tort. Gattegno made Muir a cross-defendant. Muir was dismissed from the suit by a peremptory charge and Gattegno assigned such action as error. In discussing this phase of the case, Judge Critz, speaking for the Commission, said: "It is clear that had The Parisian sued both Gattegno and Muir and asked and obtained a judgment against both of them jointly and severally, and had it been found that both defendants were equally guilty, and had The Parisian then collected such judgment from Gattegno alone, he (Gattegno) would have had the right of contribution to the extent of one-half from Muir. This being the case, we think when The Parisian sued Gattegno alone he had the right to retain Muir in the suit and compel him to contribute the same as though he had been sued by The Parisian. In other words, we do not believe that Gattegno should be defeated of his right of contribution, if any he had, from Muir simply because the plaintiff did not see fit to seek a judgment against Muir. Under this view of the case the trial court erred in delivering a peremptory charge to the jury in favor of Muir on Gattegno's cross-action against him."

In further support of this proposition are the following cases: Oats et al. v. Dublin Nat. Bank et al., 127 Tex. 2, 90 S.W.2d 824; Bradshaw v. Baylor University et al., 126 Tex. 99, 84 S.W.2d 703; Texas Power & Light Co. et al. v. Stone, Tex. Civ.App., 84 S.W.2d 738, writ refused.

In view of the above authorities it is our opinion the trial court erred in not in some manner presenting to the jury, in behalf of the defendant Glazer, the correct legal duty the defendant railway company owed to the plaintiff, Mrs. Nona Wheeler. It is entirely possible that had such been done a different conclusion might have been reached by the jury. In such case the jury might have placed all the responsibility upon the railway company or at least a part of it. In the first instance the defendant Glazer would have escaped all liability, and in the second instance he would have been entitled to contribution from his codefendant for one-half of the liability.

The plaintiff and the defendant railway company contend that to have presented to the jury for the benefit of Glazer the higher degree of care due the plaintiff by the railway company would have given

Glazer the right to supervise the contest between the plaintiff and the railway company. We think this contention is specifically overruled by the authorities from which we have quoted above. If a defendant who is sued has the right to bring in another defendant not sued and keep the latter in the suit after he has been impleaded, as announced in the above authorities, surely the first defendant would have the right to charge the second defendant with the same high degree of care which is by law imputed to him, and a violation of such degree of care would be just as vicious on his part as a violation of a lower degree of care upon the part of one not so charged. The defendant Glazer was not responsible for the plaintiff's election to stand upon the degree of ordinary care as against the railway company; and in this connection we think the plaintiff was entitled to base her recovery against the railway company upon such degree of care although it placed a greater burden upon her. But in doing so she must not deny to the defendant Glazer his rights in the matter. In connection with his defense against each of the other parties and in connection with his claim against his codefendant, either appropriate instructions should have been given as to the correct legal duty of the railway company to the plaintiff or separate and appropriate issues based upon the higher degree of care should have been submitted against the railway company for the benefit of Glazer alone. The trial court failed to recognize the rights of Glazer in this respect, which omission, we think, was error.

[6] In view of another trial of this case we deem it necessary to discuss briefly the assignments with reference to the submission of unavoidable accident. Due to the congestion of traffic at the point of collision and the absence of definite proof that the vision of the actors in the event was not obscured by the heavy traffic or by the building at the southeast corner of the intersection, we are unauthorized to say as a matter of law that the issue of unavoidable accident was not in the case. Magnolia Coca Cola Bottling Co. v. Jordan et ux., 124 Tex. 347, 78 S.W.2d 944, 97 A.L.R. 1513; El Paso Electric Co. v. Hedrick, Tex.Com.App., 60 S.W.2d 761; Winn v. Taylor, Tex.Civ.App., 111 S.W.2d 1149; Dallas Ry. & Terminal Co. v. Garrison, Tex.Com.App., 45 S.W.2d 183.

The trial court defined unavoidable accident as follows: "By the term 'unavoidable accident' as that term is used in this charge is meant an occurrence that happens without negligence on the part of the operator of the street-car in question or the driver of the truck in question". In connection with this definition the court submitted the following issue: "Do you find from a preponderance of the evidence that the collision in question was not caused by an unavoidable accident? In answering this question you will state, if you so find from the preponderance of the evidence, 'the collision was not caused by an unavoidable accident'. If you have not so found and so stated, then let your answer be 'the collision was caused by an unavoidable accident'". The jury answered this issue: "The collision was not caused by an unavoidable accident". The defendant Glazer contends that this submission of the issue ignores and excludes from the consideration of the jury the element of causation with reference to negligence of the defendants. Since the plaintiff was not charged with negligence no complaint is made as to the omission of her name from the above definition.

In the case of Southern Ice & Utilities Co. v. Richardson et al., 128 Tex. 82, 95 S.W.2d 956, 958, the court suggested a definition of unavoidable accident as being "an event which occurs without the negligence of the plaintiffs or the defendant". We can see no material difference, as far as the element of causation is concerned, in the phrase "occurs without negligence", as used in that definition, and the phrase "happened without negligence", as used in the definition in the instant case. The court in the Richardson case further directed that a proper issue in that case would be: "Do you find from a preponderance of the evidence that the collision in question was not due to an unavoidable accident?" The only distinction in that issue from the one given in the instant case is that in the latter the words "caused by" were substituted for the words "due to" used in the former. This distinction we think is immaterial. In view of this authority and other expressions upon the subject which have had the supervision or approval of the Supreme Court of Texas, it is our opinion that the element of causation with reference to negligence of the defendants was sufficiently included in the above submission. Wichita Valley R. Co.

v. Minor, Tex.Civ.App., 100 S.W.2d 1071; Dallas Ry. & Terminal Co. v. Darden, Tex. Com.App., 38 S.W.2d 777; Texas & P. R. Co. v. Edwards et al., Tex.Com.App., 36 S.W.2d 477; Orange & N. W. R. Co. v. Harris et al., 127 Tex. 13, 89 S.W.2d 973; Galveston, H. & S. A. R. Co. v. Gormley et al., Tex.Civ.App., 35 S.W. 488; Magnolia Coca Cola Bottling Co. v. Jordan et ux., supra; Dallas Ry. & Terminal Co. et al. v. Price et ux., 131 Tex. 319, 114 S.W. 2d 859; Dallas Ry. & Terminal Co. v. Garrison, supra.

■ The defendant Glazer further complains as to the submission of unavoidable accident on the theory that the event might have been an unavoidable accident as to him regardless of the negligence of the railway company and that such a submission would not permit him to escape liability thereunder unless it was shown that his codefendant was not guilty of negligence. Under the approved definitions of unavoidable accident the criterion of its existence is the absence of negligence upon the part of all of the parties charged therewith. The want of negligence of the parties as a contributory cause is the very essence of the doctrine. Under all of the authorities upon the subject we think that negligence upon the part of the codefendant as a contributing cause of the event would necessarily exclude the idea that the accident was unavoidable. Such being true we think the complaint of the defendant Glazer in this respect is without merit.

The other matters about which the defendant Glazer complains will likely not occur in the same manner, if at all, upon the retrial of this case, and we therefore deem it unnecessary to discuss such assignments.

The judgment of the trial court is reversed and the cause remanded.

On Motion for Rehearing.

The plaintiff and the defendant railway company have each filed motions for rehearing in which a vigorous attack is made upon our holdings above with reference to the issues of contribution and high degree of care. Such attack is predicated chiefly upon the alleged insufficiency of the defendant Glazer's pleadings to raise these issues. Since the plaintiff alleged the relationship of passenger and carrier as between her and the railway company and the defendant Glazer filed a general denial to the whole of her pleadings, the contention is made that Glazer is estopped to assert such a relationship in the absence of an affirmative allegation on his part that such relationship existed and, such being true, Glazer has no right to complain as to the court's failure to present to the jury the correct degree of care due the plaintiff by the railway company, the defendant Glazer thus losing his right to contribution.

■ After another very careful examination of the record it is still our opinion that the defendant Glazer's pleadings were sufficient to present the question of high degree of care in regard to the conduct of the railway company and to raise the issue of contribution. After the general demurrer, special exceptions and general denial of the defendant Glazer, there followed the following allegations:

"That said collision and injury, if any, of plaintiff was caused by the following acts of negligence of the operator and/or operators of defendant's street car or cars while acting within the scope of their employment.

"(a) Operating or driving said street car, into the intersection in question at a speed in excess of 18 miles per hour, in violation of Sections 1 and 2 of Ordinance No. 421, which provides in substance as follows: (here follows provisions of such ordinance).

"This defendant * * * would further show that said act of negligence was the sole proximate cause of this collision.

"(b) In the alternative this defendant would show that said street car was operated or driven on a highway in the City of Dallas at a speed that was greater than was reasonable and prudent under the conditions then existing, and that such negligence was the sole proximate cause of the collision in question.

"(c) In the alternative this defendant says that said street car on the occasion in question was operated at a greater rate of speed than a person of ordinary prudence would have operated it under the surrounding circumstances, and that said negligence was the sole proximate cause of the collision in question."

Following the allegations just quoted the defendant Glazer further alleged that the operator of the street-car failed to keep a proper lookout; that he failed to have the street-car under proper control; that he was "making change for *passengers* and receiving fare, as a result of which the attention of the operator of said car was at the time and on the occasion in question dis-

tracted from his duty in operating or driving said street-car" (italics ours); that the operator of both the north bound and the south bound street-cars were each negligent in entering the intersection after the other had entered; and that each of such acts was negligence and constituted the sole proximate cause of the collision. The defendant Glazer in his prayer for relief asked that if for any reason he should be held liable to the plaintiff in any respect that he have judgment over and against the defendant railway company for contribution, and for such other and further relief to which he might be justly entitled.

We direct attention to the above allegation of Glazer in regard to the speed of the street-car wherein he alleged that such street-car was operated at a speed that was "greater than was reasonable and prudent under the conditions then existing", and at a "greater rate of speed than a person of ordinary prudence would have operated it under the surrounding circumstances". One of the "conditions then existing" and one of the "surounding circumstances" was that the plaintiff was a passenger on the street-car of the railway company, a fact about which all the parties were fully cognizant. In the absence of a special exception it is our opinion that these allegations constituted a sufficient predicate for our holdings on these issues in our original opinion.

If we be mistaken in our conclusions that the pleadings of Glazer are adequate to raise the issue of contribution, such theory could be completely stricken from the case and still the defendant Glazer would be entitled to have the high degree of care charged against the railway company by reason of his specific defense that each of the various alleged negligent acts of the railway company constituted the sole proximate cause of the collision. There could be no doubt of the meaning of his pleadings in this respect. By such assertions he was definitely attempting to shift the entire responsibility to his co-defendant. If the defendant Glazer had been successful in establishing such defense he would have been acquitted of any liability regardless of the question of contribution, and again we repeat that if the proper degree of care had been placed upon his co-defendant his efforts in this respect might have been more fruitful.

In this connection we wish to call attention to the familiar and often cited case of Gulf, C. & S. F. R. Co. v. Conley et ux., 113

Tex. 472, 260 S.W. 561, 32 A.L.R. 1183. That case, which involved a carrier of passengers, was submitted upon a general charge wherein the jury was instructed that a "carrier of passengers is required to exercise the greatest degree of care which can be exercised under all the circumstances short of a warranty of its passengers". The Supreme Court of Texas held that such an instruction, as far as the railway company was concerned, was affirmatively erroneous in that it imposed a greater burden and duty upon the railway company than is required by law, and that it was calculated to mislead the jury. If this instruction imposing such excessive burden was prejudicial to the rights of the railway company in that case, we think in the instant case it is inescapable that an instruction or definition imposing a lesser burden upon the railway company than that required by law, was prejudicial to the rights of the defendant Glazer in his defensive attempt to shift the entire responsibility to his co-defendant, and, as to him at least, such charge was affirmatively erroneous.

The motions for rehearing are overruled.