**TEXAS & PACIFIC RY. CO. v. DAY.**

No. 4425.

Court of Civil Appeals of Texas. El Paso.

Nov. 8, 1945.

On Rehearing Feb. 7, 1946.

William L. Kerr, of Midland, and Hill D. Hudson, of Pecos (D. L. Case, M. E. Clinton, and J. T. Suggs, all of Dallas, on the brief), for appellant.

John J. Watts, of Crane (Critz, Kuykendall, Bauknight, Mann & Stevenson and Richard Critz, all of Austin, of counsel), for appellee.

PRICE, Chief Justice.

This is an appeal from the judgment of the District Court of Crane County. Bryson Day, as plaintiff, sued the Texas & Pacific Railway Company to recover damages for personal injuries alleged to have been caused through the negligence of defendant. This is a crossing accident, occurring in the city of Odessa, at what is known as the "ice factory crossing". At about 1 p. m. on the 18th day of February, 1944, the plaintiff in his automobile approached the crossing from the south. He stopped a short distance from the intersection to await the passage of a train going east, over what is known as the passing track of defendant. After the last car of the train cleared the intersection, the plaintiff started to proceed over the intersection, and his automobile was struck by a train of defendant going west on the main track, same being one of three tracks intersecting the street along which plaintiff was traveling.

The trial was by the court, with a jury. Submission was on numerous special issues. The jury returned a verdict that the train striking plaintiff was operated at a negligent rate of speed, and such negligence was the proximate cause of the injuries; that

the crossing was extra hazardous, and defendant was guilty of negligence in not maintaining a flagman at the crossing on the occasion in question, and such negligence was a proximate cause of his injuries. That plaintiff was not guilty of contributory negligence; that they did not find by a preponderance of the evidence that the collision was not the result of an unavoidable accident. Damages were found in the sum of Thirty-six Thousand Dollars ($36,000).

The Court received and accepted the verdict as returned. On timely motion by the plaintiff the Court set aside the finding as to unavoidable accident, overruled the motion of defendant for judgment non obstante veredicto, and rendered judgment in the sum of $36,000 against defendant.

Appellant urges five points of error. They may be summarized as follows:

The verdict as received was insufficient to warrant entry of judgment. That the issue of unavoidable accident was in the case, and the court erred in setting aside the verdict of the jury in this respect; further that under the evidence as a matter of law the plaintiff was guilty of contributory negligence, and the court erred in overruling its motion to instruct the jury to return a verdict in its favor, and further erred in overruling its motion for judgment non obstante veredicto. Complaint is made that the court erred in allowing plaintiff's trial amendment. It is also urged that there was error in the direction of the trial court in relation to the issues submitting damages.

There being no question as to the pleading save as to the filing of the trial amendment, it is not deemed necessary to here summarize same. In view of the contention of the parties it is deemed necessary to consider the evidence to determine whether or not as a matter of law plaintiff was guilty of contributory negligence.

The crossing on which the collision took place is referred to in the evidence as the "ice factory crossing". The street which the three tracks of appellant intersects runs north and south, the tracks running east and west. The most southerly track is called the team track. North of this is the passing track, and north of the passing track is the main track. There is a space of about ten feet between the passing track and the main track. Perhaps there is somewhat a greater space between the team and passing track. This is a much used crossing; there is testimony that a vehicle passes over same during each fifteen minutes of the day. The tracks divide the city of Odessa into two parts; more inhabitants live north of the track, but a substantial portion live south of same. The population of the city is about fourteen thousand. Appellant each day operates a number of trains, cars and engines across this intersection. This crossing is and was on the day of the accident, protected by flasher lights both on the north and the south side thereof. 'On the north side the flasher lights face both north and south, and when in operation they flash red lights both north and south. The flasher lights facing north on the north side of the crossing spell out the word "Stop". The flasher lights on the south face north and south, and likewise spell out the word stop on the lights facing south when in operation. These lights are activated by electrical impulse. If a train or car was on either the team or passing track within about thirty feet of either side of the crossing, the lights were activated. In case of the main track, if a train or car was within approximately a half mile of either the west or east side of the crossing the lights were activated. When one approached the crossing from the north or south, the lights being so activated, he would be faced by the flashing red light with the admonition to stop. If he entered the intersection from the south while the lights were not operating and before he completed the crossing a train or car came on either of the three tracks close enough to activate the lights, the red flasher lights on the north side facing south would be in operation and visible to him. When a train was on the team or passing track, and when its rear car had passed over the crossing for a distance of thirty feet, such train ceased to activate the lights; in case of the main track after the rear car had cleared the crossing it ceased to activate the lights.

There was testimony that frequently freight cars were placed on and allowed to stand on the team and passing tracks both on the east and west side of the crossing. There was no substantial evidence that they were so placed and allowed to remain in such proximity to the crossing as to activate the lights. At the relevant time the passing track was evidently not so obstructed to the east. This is said in view of the fact that the train going east had

just passed along this track. There may have been cars on the team track. However, if such was the case they did not seem to interfere with the view of plaintiff to the east. He stated before starting his car he looked to the east, and the rear car of the train which was on the passing track had passed over the crossing some fifty or sixty yards. The only thing that it seems could have obstructed his view of the main line east was the receding train.

Plaintiff was familiar with this crossing and the lights thereat. For something over a year he had lived south of the tracks and passed over same at least once each day.

Plaintiff's account of the accident is in substance that on the afternoon of February 18th, about 1 p.m., he came up to the crossing from the south, intending to proceed across same. When he arrived, a train proceeding slowly east on one of the tracks occupied same; that he is not clear as to which track this train was on, but thinks it was on the team track. Other testimony without dispute establishes it was on the passing track. He says he stopped his automobile a short distance south of the intersection and waited for this train to clear the crossing. When the rear car had cleared the crossing by about fifty or sixty yards he looked to the east and saw no train approaching, and started his car, looking to the west at the same time. When he looked again to the east the train approaching from the east was so near that he could not avoid being struck thereby. Plaintiff was under the impression that the train he saw proceeding east was on the team track. In this, under the undisputed facts, he is mistaken; it was on the passing track. He likewise said he thought that he was struck by a train on the middle, or passing track. In this he is likewise mistaken; the train that struck him was on the main track. He said he did not remember whether he looked for the lights or not, and whether same were in operation. We here set out one question and answer of the plaintiff:

"Q. In your personal experience you never observed a time that they were not on that you saw, when a train was passing? A. I am by that just like the other. If I have noticed it I have forgot all about it, but I know the lights are supposed to come on when a train is crossing. Doesn't anyone I know pay any attention to those lights without they see a train coming across, because they go across all the time with the light on and I see them and everybody else sees them."

Reverend Bedford, a witness for plaintiff, testified his car was stopped immediately behind plaintiff's. Neither side asked him directly as to whether the lights were flashing at the time plaintiff started across. It is rather significant that this witness did not start his car forward in an attempt to make the crossing at the time plaintiff did. In reply to this question by counsel for the plaintiff

"Q. All right, you say 'If it had not been him it would have been you?'" he answered: "Yes sir. I have did that very same thing very often, being in a hurry."

We think the inference is fair that the witness meant that the lights were flashing on the south at the time plaintiff started forward. However, he may have referred only to the whistle.

A careful consideration of the testimony can lead to but one conclusion—that before plaintiff started, the lights facing south on the south side of the crossing were flashing, and he was faced with the admonition "Stop". This conclusion is compelled, we think, from the fact that the train approaching on the main track from the east activated the lights when it was approximately within one half mile of the intersection. Plaintiff's own testimony was that from the time he started until he was struck about ten seconds elapsed. The verdict established that the train striking him was going thirty-five miles an hour. Further, if by any possible chance the train on the main track had not activated the lights before plaintiff started across, that before plaintiff reached the main track the lights facing south on the signal on the north side of the track had certainly commenced to flash.

There seems to be no doubt that on the occasion in question the lights were functioning perfectly. Mr. Pettie, an employee of defendant, who was charged with the care and maintenance of those lights, testified that they were so functioning right after the accident. At the time of the accident he was at the depot, and arrived at the scene a short time after the occurrence. He further testified that if the lights were not functioning properly they would flash all the time. There is no evidence worthy of mention that these lights were not functioning properly. It was intimated in the

evidence that the lights did not always operate on the Grant Street crossing, but it seems that there was no dispute that the team and passing track on that crossing were not connected with the flasher system; at that crossing trains passing on the team or passing track would of course not activate the lights.

A careful consideration of the testimony as a whole and the testimony of plaintiff himself compels the conclusion that he either failed to look for the warning signals or saw and ignored them.

Crossing signals that fail to function as designed are a source of danger rather than safety. On the other hand, a disregard for properly functioning signals is a source of great danger. The trains are operated in reliance on the motorist heeding such signals and governing his conduct thereby.

■■■ In this case the assertion is that the evidence established contributory negligence as a matter of law. It is hardly necessary to cite precedents on the proposition that contributory negligence is ordinarily a question of fact for the jury. We know of no general law that makes it a penal offense for a motorist to proceed over a crossing in the face of a warning light not to do so, or for that matter, in face of a warning by flagman not to do so. The principle is that conduct not declared penal by law should not ordinarily be held by the courts as constituting negligence per se. However, as stated in the case of Gulf, C. & S. F. R. Co. v. Gaddis, Tex.Com.App., 208 S.W. 895, it is well settled that in this state that one who crosses a railroad track must as a matter of law exercise some degree of care for his own safety. This decision was expressly adopted by the Supreme Court, and has since by that Court been cited with approval.

In essence there can be but little difference between a motorist disregarding the signal of a flagman not to cross and disregarding an automatic signal so warning him. No doubt on occasions one may cross an intersecting railroad track in face of a flagman's signal not to do so. These signals, whether given by flagmen or by automatic devices, should and no doubt do allow a margin of safety. In the case of St. Louis B. & M. R. Co. et al. v. Paine, Tex.Civ. App., 188 S.W. 1033, this court in somewhat analogous situation held as a matter of law that plaintiff was guilty of contributory negligence.

In 56 A.L.R., at page 543, there is a very thorough annotation on the question of whether or not one who attempts to cross railroad tracks just after a train or part of a train has crossed over the crossing and is struck by a train on another track is guilty of negligence. Likewise there are a number of cases cited in the supplements to the note relative to this matter.

The case of Gulf, Colorado & Santa Fe Ry. Co. v. Gaddis, supra, and St. Louis B. & M. R. Co. et al. v. Paine, supra, are digested there. There is likewise cited the case of International & G. N. R. Co. v. Knight, Tex.Civ.App., 52 S.W. 640. In the latter case one struck by a train coming another direction was held not guilty of contributory negligence as a matter of law, and writ of error was denied by the Supreme Court in that case. However, the facts of that case are materially different from the facts here involved.

It is true that on either the team or passing track a standing car or train within thirty feet of either side of the crossing would activate the lights; that a train on the main track in approximately half a mile of either side of the crossing standing still would activate the lights. However, those lights were intended to warn of the approach of a train in dangerous proximity to the crossing. This the plaintiff understood. There is, as we have stated, no substantial evidence that the defendants kept these lights flashing at all times or any considerable portion of the time; no evidence that they flashed save when it was necessary to warn the public that the crossing was dangerous. That other persons on other occasions had passed over this crossing in disregard of the light, in our opinion has no bearing on the issue. These grade crossings are common throughout the entire country. In many cases, no doubt, they are what might be termed a necessary evil. The jury found here that this was an extra hazardous crossing. If there be evidence to sustain this finding (and same is not attacked), then this we think would not excuse the plaintiff from the exercise of all care. Had he heeded these warning lights he would not have received the severe injuries he did suffer. Even after he had crossed the team track and the passing track there was time for him to have still saved himself had he heeded the signal. It is fair to assume, we think, that as he crossed over the team track he could see there was no train

approaching within dangerous distance on that track; the same when he crossed the passing track, and then the only danger indicated was from the main track, and he deliberately drove on to same in front of a passing train in the face of a warning that it was near. In attempting to make this crossing, under the circumstances, plaintiff recklessly and carelessly speculated with his own safety. The cases cited below are deemed to support our finding that plaintiff was guilty of contributory negligence as a matter of law, and can not recover. Sanchez v. San Antonio & A. P. Ry. Co., 88 Tex. 117, 30 S.W. 431; International & G. N. R. Co. v. Edwards, 100 Tex. 22, 93 S.W. 106; Gulf C. & S. F. R. Co. v. Gaddis, Tex.Com.App., 208 S.W. 895; Galveston H. & S. A. R. Co. v. Price, Tex. Com.App., 240 S.W. 524; Fort Worth & D. C. R. Co. v. Bell, Tex.Civ.App., 14 S.W.2d 856, writ refused. Additional precedents could be cited. The long and short of the matter is that in absolute disregard of signals to refrain from going upon the track on account of the imminent approach of a train plaintiff drove thereon and suffered the serious injuries complained of. His action amounted to contributory negligence as a matter of law.

Our disposition of the issue of contributory negligence renders unnecessary a discussion of the other assignments. The facts in this case have been fully developed, and in our opinion they call for the reversal and rendition of the case. If there be an error in this, in our opinion the issue of unavoidable accident was in the case, and the court erred in setting aside the jury's finding on the issue. The assignment as to the trial amendment is deemed without merit, and that as to the court's direction relative to the measure of damage fails to prevent reversible error.

It is ordered that the judgment of the trial court be reversed and here rendered for the defendant.

Opinion on Rehearing.

We have carefully reviewed this entire case in the light of appellee's motion for rehearing and the written arguments in support thereof, and appellant's replies thereto. In our opinion the trial court under the evidence developed should have instructed a verdict in favor of defendant. Plaintiff, when he attempted to cross, knew or was charged with knowledge that there were three tracks; that the signal lights signalled that it was unsafe to cross, and to stop. Despite this he attempted to cross in heedless disregard of the signals; attempted to cross when according to his theory the view of the approaches along the track to the west were obstructed by standing cars and to the east by the receding train. The trial court did not instruct a verdict, but submitted the case to the jury, and on the issue of contributory negligence the verdict was in plaintiff's favor.

In the original opinion it was stated that the case had been fully developed, and hence we rendered same. In this holding we were perhaps in error. It may be that on another trial evidence may be obtained excusing the plaintiff's utter disregard of the warning signals not to attempt to make the crossing at the time he did. We reaffirm the holding that there was no substantial evidence that these lights unnecessarily frequently flashed danger when there was no danger; if they had it would present some justification for the disregard of same. True, if the view east and west from the crossing was habitually obstructed it would seem that there was a greater necessity for heeding the signals. However, danger signals habitually crying "wolf" when there is no wolf may be a delusion and a snare. We also reaffirm the holding that there was no substantial evidence indicating that these signals failed to function as they were intended on the occasion in question. In fact, it is still thought it was established beyond issue same were properly functioning at the time of the accident. It is not thought that plaintiff's testimony in substance that nobody paid any attention to these lights unless they saw a train presents a justification for plaintiff's ignoring same, assuming (as we must) that plaintiff's statement was true. The question then naturally arises as to why this general disregard. The unreliability of the signals may not be inferred from the general disregard of same —on another trial plaintiff may be able to justify or excuse his deliberate disregard of same, by testimony not inconsistent with his own testimony.

Even though the trial court should have instructed a verdict in favor of defendant, if justice may be best served by reversing and remanding the case then same should not be rendered by the Appellate Court. Texas Employers' Ins. Ass'n v. Herring, Tex.Com.App., 280 S.W. 740. It is thought further citation of authorities

is unnecessary to sustain the above proposition.

In the original opinion it was stated that in the event our holding that plaintiff was guilty of contributory negligence as a matter of law was incorrect, that it was thought the issue of unavoidable accident was raised by the evidence. If this be correct, the court erred in setting aside the jury's finding thereon in favor of defendant. The verdict with that finding would not support a judgment in favor of plaintiff, because same conflicted with the finding of negligence. Our decision to reverse and remand the case necessitates, or at least renders appropriate a consideration of the points in relation to unavoidable accident. Under the law this consideration must be from the standpoint before the verdict was returned, rather than after. Montrief & Montrief v. Bragg, Tex.Com. App., 2 S.W.2d 276; Colorado & Southern R. Co., v. Rowe, Tex.Com.App., 238 S.W. 908; Greer v. Thaman, Tex.Com.App., 55 S.W.2d 519.

Of course, if plaintiff was guilty of contributory negligence as a matter of law, the issue is not in the case. The point will be discussed on the assumption that our holding thereon is erroneous, or that contributory negligence on another trial may become an issue of fact. It is clear the issue of defendant's negligence was in the case under the evidence. Findings favorable to defendant that it was not negligent as to speed, etc., or that the intersection was not extraordinarily dangerous would have been sustained. The jury found that the train approached at a speed of 35 miles per hour. If the findings had all been favorable to the defendant on the issues of negligence and to plaintiff as to contributory negligence then we would have had a calamitous result uncontributed to by the negligence of either the defendant or plaintiff. A result so brought about is caused by accident. Beyond question the conduct of defendant and that of plaintiff was the cause of this injury. Under the evidence the conduct of either or both might have been found to have lacked the quality of negligence.

The case of Magnolia Coca Cola Bottling Co. v. Jordan, 124 Tex. 347, 78 S.W. 2d 944, 97 A.L.R. 1513, is strongly relied upon by appellee as sustaining the position that the issue of unavoidable accident was not raised by the evidence. In that case defendant's theory was that its car did not strike the car driven by plaintiff's wife. This was its defense. Its contention was that it did not commit the act charged. It was held the issue of unavoidable accident was not in the case. The damage was either the result of negligence of the plaintiff or defendant.

The case of El Paso Electric Co. v. Hedrick, Tex.Com.App., 60 S.W.2d 761, is more nearly in point here, and in a large measure governs. In that case there was evidence raising the issue that each party was free from negligence. There was evidence that defendant's motorman did not see plaintiff's motorcycle on account of a car in front of it, which then turned in another direction. Here the transitory obscuration of appellee's view to the east by the passing train may have been the real cause of the collision. The only distinction between this case and that lies in the fact that here the view was obstructed by a train under the management and control of defendant, and there the obscuration was caused by the vehicle of a third party. It is thought this is an immaterial distinction. It is not charged that defendant was guilty of negligence in operating its train on the passing track.

It is said in the case of Orange & N. W. R. Co. v. Harris, 127 Tex. 13, 89 S.W.2d 973, 975: "[that] the issue of unavoidable accident is raised when there is evidence tending to prove that the injury resulted from some cause other than the negligence of the parties." The opinion cites in support of the proposition announced, Texas & Pacific R. Co. v. Edwards, Tex.Com. App., 36 S.W.2d 477, and Greer v. Thaman, Tex.Com.App., 55 S.W.2d 519. See also Glazer v. Wheeler, Tex.Civ.App., 130 S.W. 2d 353, reversed 137 Tex. 341, 153 S.W.2d 449, 140 A.L.R. 1301.

A calamitous event where the parties involved in producing same are each and all free from negligence is the result of an unavoidable accident. Linden v. Miller, 172 Wis. 20, 177 N.W. 909, 12 A.L.R. 665.

The verdict acquitted appellee of negligence. Under the evidence there would have been ample justification for the same finding as to appellant. A submission of the issue of unavoidable accident serves the purpose of calling the matter to the attention of the jury so that the jury will understand that they do not necessarily have to find that one or the other of the

parties was to blame for the occurrence. Wheeler v. Glazer, 137 Tex. 341, 345, 153 S.W.2d 449, 140 A.L.R. 1301.

It is thought that even though it might not have constituted error to omit from the charge an issue of unavoidable accident, or to refuse a specific issue thereon, that this verdict even then will not support the judgment for the plaintiff and the court erred in setting aside the finding thereon. Where there is an issue under the evidence whether or not an act or omission resulting in damage to another is negligence, the issue of accident or unavoidable accident is within the content thereof. If the act or omission charged as negligence is not negligent, the damage must be the result of an accident, or unavoidable accident. If a harmful tendency of conduct is excusably unforeseeable, it is accidental rather than negligent. The cases wherein it is held that an erroneous form of submission of the issue was immaterial do not militate against the above. The issues were found in favor of plaintiff, and were consistent with the finding of negligence on the part of defendant. Here, so far as the record goes, plaintiff did not except to the submission of the issue of unavoidable accident. The verdict reflects findings on the preponderance of the evidence that defendant was guilty of negligence, findings also that it was not found from a preponderance of the evidence that either defendant or plaintiff was guilty of negligence. If plaintiff's contention be correct that the issue of unavoidable accident was not in the case, then it is thought that there was a dual submission of the issues as to negligence, and the findings conflict. Beyond a doubt the plead issue of unavoidable accident should be submitted when the issue arises that something other than the acts or omissions of defendants charged as negligence or the negligence of plaintiff was the cause of the damage. This is true, even though the cause be unknown. Colorado & So. R. Co. v. Rowe, Tex.Com.App., 238 S.W. 908.

This holds true in most cases as in this where there is evidence as to another innocent cause of damage. Plaintiff was unable to see the approaching train on account of the receding train. It is thought the issue of unavoidable accident as an independent issue was and is in this case. The case of El Paso Electric Co. v. Hedrick, supra, has never, so far as we have been able to find, been modified.

Appellant's points as to the measure of damages do not present reversible error, even though the direction under the issue as to damages is not entirely free from criticism.

It is ordered that our former judgment reversing and rendering this case be set aside, and that the cause be reversed and remanded for a new trial.