# Richmond

GEORGE LEE MAWYER v. WARREN C. THOMAS.

April 28, 1958.

Record No. 4777.

Present, Eggleston, Spratley, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*Edward E. Lane* (*Thomas P. Harwood, Jr.; Lane, Rogers & Paul,* on brief), for the plaintiff in error.

*John G. May, Jr.* and *A. Christian Compton* (*May, Garrett, Miller & Newman,* on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This action for damages was brought by George Lee Mawyer, plaintiff, against Warren C. Thomas, defendant, following a collision between the automobiles being driven by them at the intersection of Main street and Ninth street in the city of Richmond. The trial before a jury resulted in a verdict for the defendant upon which the court entered judgment. The plaintiff contends on this appeal that the verdict was contrary to the evidence and that the court erred in its rulings on instructions and on the admission of testimony.

Main street runs east and west, is one-way west in the area of the accident and has four lanes but parking was allowed on the outside ones at the time of this accident. Ninth street running north and south is a two-way street of four lanes divided by solid lines between the northbound and southbound lanes. It approaches Main street from the south up a 6½ per cent grade. There were traffic lights on all four corners of the intersection and a large building at each corner bordered by sidewalks. At the intersection Main is 45 feet wide and Ninth is 42 feet wide between the curbs. The Mutual Building stands at the southeast corner of the intersection. The sidewalk on the Main street side of this building is 16.1 feet wide and on the Ninth street side is 11.35 feet wide, and on each street is an areaway extending 5 feet from the building into the sidewalk and guarded by a railing of iron grillwork and posts 4.79 feet high at the corner. Cars were parked on the south side of Main street up to the corner, according to the defendant. The intersection was within a 25-mile speed zone.

About one o'clock in the morning of August 2, 1956, the plaintiff was driving west on Main street approaching this intersection as the defendant was approaching it on Ninth street. The traffic lights facing the plaintiff on Main street were blinking amber, indicating

need for caution, and the lights facing the defendant were flashing red, requiring him to stop before entering the intersection, Code, § 46-203 (1956 Cum. Supp.).

In support of his contention that the collision was due solely to the negligence of the defendant the plaintiff introduced as witnesses himself, his companion riding on the front seat with him, the driver of a Transit Company bus and two of its passengers, and a city police officer. The first five testified they were eyewitnesses of the accident and the officer testified about conditions at the scene after the accident. The sum of their testimony was this:

The plaintiff entered Main street at Fourteenth, east of the accident, and drove west in the lane next to the middle of the street just about alongside and on the left of the bus driving in the same direction. The plaintiff's speed was about 25 miles an hour and near the middle of the block between Tenth and Ninth streets he slowed down to 10 or 15 miles an hour as he was entering the intersection. As he approached the intersection he looked to his left and could then see the west side of Ninth street about halfway down the block but he did not then observe any traffic. As he proceeded into the intersection and the front end of his car was at the Main street crosswalk, he saw the lights of the defendant's car about halfway down the block and "within a split second the accident occurred." The front of the defendant's car struck the plaintiff's car about the opening of the left front door and the impact continued toward the front of the left fender. The plaintiff's leg was caught under the instrument panel, his foot was jammed against the accelerator and his car swung to its right in front of the bus, which had stopped, and struck a fire hydrant, continued over some parking meters and signs in the edge of the sidewalk on Main street and stopped against a bank building 183 feet west of the intersection. The car of the defendant swerved around to its left, struck the rear of the bus and faced back down Ninth street in the opposite direction from which it came.

The driver of the bus said that as he entered the intersection at 15 or 20 miles an hour he caught a glimpse of the plaintiff's car at the tail of his bus, saw the defendant's vehicle on Ninth street about the middle of the block "coming at a pretty good clip" and sensing that there would be a collision he stopped his bus in the intersection, blocking it. His two passengers said the defendant's car was approaching at a fast speed and they, the bus driver, the plaintiff and

his companion all testified that the defendant did not stop before entering the intersection.

The defendant's witnesses were himself and a surveyor. The latter made measurements and introduced a map of the intersection showing the distances and the fixed objects. The defendant testified that he was going home from work; that he had stopped at Cary street, which is immediately south of Main street, and was proceeding north up Ninth street toward its intersection with Main at about 25 miles an hour, traveling in the lane immediately east of the center of the street; that cars were parked to the corner on the south side of Main to his right (the direction from which the plaintiff was coming); that in order to get a clear view down Main street he had to get as far as the crosswalk up in the intersection. He understood that the red blinking light facing him required him to stop and he did stop when the front end of his car was at a point within the crosswalk on Ninth street. From that point he could not see down Main street because of the parked cars and he pulled up into the intersection to a point from which he saw plaintiff's car coming "a good car's length" away, "traveling at a terrific speed, at least 50 miles an hour." All he could do then, he said, was to cut to his left and they came together in a way he illustrated, "rolled together in that fashion," which threw the rear end of his car around against the bus so that his car headed back south on Ninth street.

When he stopped for the light, he said on cross examination, "I wouldn't say it was a complete dead stop, just like a dead stop, but it was a stop enough that you could look and then pull up into the intersection, especially on an automatic shift car."

The plaintiff argues that on this evidence he was entitled to a verdict and that we should reverse the judgment and remand the case for assessment of his damages. That action, however, would infringe the established rule for considering a verdict on conflicting evidence which has been approved by the trial court. It is the function of the jury as the triers of the facts to settle the conflicts in the evidence. If the case has been fairly submitted to them and their verdict has been approved by the trial court, we cannot disturb it unless it is plainly wrong or without credible evidence to support it. The weight of the evidence is not necessarily determined by counting the witnesses. 1 Mich. Jur., Appeal and Error, § 274, p. 701; *Morien* v. *Norfolk & A. T. Co.*, 102 Va. 622, 46 S. E. 907; *Norfolk, etc., Belt Line R. Co.* v. *Freeman*, 192 Va. 400, 64 S. E. 2d 732.

The evidence for the defendant is not incredible. It was in complete conflict with the evidence for the plaintiff, but that is not a rare occurrence. Here it creates a problem which a jury should resolve, with guidance from the court by proper instructions.

The court gave 14 instructions covering about every possibility that the evidence might suggest. They would have been more helpful if they had been less prolix. The plaintiff contends that three of them given on defendant's motion were wrong and require reversal. One of these was Instruction G, as follows:

"The court instructs the jury that even though each party to a collision exercises all the care the law requires of him that nevertheless it recognizes that accidents occur. In such an event they are known as unavoidable accidents. If from the evidence you believe this case presents such an accident, you should find in favor of the defendant."

This instruction should not have been given. A similar instruction was given for the defendant in *Smith* v. *Tatum*, 199 Va. 85, 91, 97 S. E. 2d 820, 824. We said in that case that an unavoidable accident, in the sense used in the instruction, means "an accident which ordinary care and diligence could not have prevented," and that the accident in that case was not unavoidable but was due to the negligence of one or both of the occupants of the car which wrecked and killed the plaintiff's decedent who was giving the defendant a driving lesson. We held that the instruction was inappropriate but not reversible error in that case because the verdict for the defendant was amply supported, if in fact not required, by the evidence. Here, likewise, there was no unavoidable accident. The collision was caused by negligence, either the negligence of the defendant or of the plaintiff, or of both, as the jury should find from the evidence. On the plaintiff's evidence the defendant was negligent; on the defendant's evidence the plaintiff was negligent; there was no evidence that the accident happened without the negligence of either and was unavoidable.

The instruction gave the jury an easy way of avoiding instead of deciding the issue made by the evidence in the case. It was reversible error to give it. The cases of *Winn* v. *Taylor*, (Tex. Civ. App.), 111 S. W. 2d 1149; *Glazer* v. *Wheeler*, (Tex. Civ. App.), 130 S. W. 2d 353; and *Orr* v. *Avon etc. Corp.*, 130 Fla. 306, 177 So. 612, cited by the defendant, are not authority to the contrary. The question of whether such an instruction should be given in a case depends, of course, on the evidence in the case. *Glazer* v. *Wheeler* agrees that

"Under the approved definitions of unavoidable accident the criterion of its existence is the absence of negligence upon the part of all of the parties charged therewith." 130 S. W. 2d at 359.

[■] By Instruction D the jury were told that it was the plaintiff's duty to keep a reasonable lookout. The plaintiff complains of it on the ground that there was no evidence that he failed to do so. There was no verbal evidence that he did not, but the defendant's testimony warranted the giving of the instruction.

Instruction E informed the jury that it was the plaintiff's duty to keep his car under reasonable control. Plaintiff contends that the instruction should have been specifically confined to the time prior to the collision. It seems sufficiently clear from its wording that such was its meaning.

The plaintiff argues that the court erred in refusing his Instruction No. 3, which would have told the jury that the plaintiff had the right to assume that the defendant would obey the command of the blinking red light and stop before entering Main street; and, further, that the plaintiff had the right to assume that the defendant "would properly operate his automobile and yield to him the preference to which he was entitled, at least until he had notice to the contrary."

The plaintiff's right to assume that the defendant would stop at the flashing red light and yield to him the right of way depends on the evidence. The plaintiff is not relieved of his own duty to exercise reasonable care and he cannot rely on an assumption if it is contrary to an obvious fact. The defendant's testimony was that he was in the intersection first and was struck by plaintiff's car which was traveling at least 50 miles an hour. An instruction on what the plaintiff had a right to assume must take account of the evidence. Instruction No. 3 as offered did not do so and as written it was properly refused.

■ There is no merit in the plaintiff's remaining assignment of error to the refusal of the court to allow a witness to point out on a photograph what she had previously testified about. The refusal was on the ground that it was repetitious, and the ruling was within the court's discretion.

The judgment appealed from is reversed and the case remanded for a new trial in keeping with the views herein expressed.

*Reversed and remanded.*